STATE

v.

**Eugene BAILEY.**

**No. 79–289–C.A.**

Supreme Court of Rhode Island.

July 30, 1980.

Dennis J. Roberts, II, Atty. Gen., Forrest Avila, Joel S. Chase, Sp. Asst. Attys. Gen., for plaintiff.

J. Ryder Kenney, Peter Olsen, Asst. Public Defenders, for defendant.

OPINION

DORIS, Justice.

The defendant, Eugene Bailey, was convicted of rape following a jury trial in the Superior Court. On appeal the defendant asserts that the trial justice erred in denying a motion to suppress certain evidence that had been obtained as a result of an unlawful entry into the defendant's apartment. Having determined that the trial justice should have suppressed the evidence, we reverse the judgment of conviction entered below.

On May 11, 1977, defendant and his girl friend, Rosemary Heup, visited the home of Rosemary's fifteen-year-old cousin, Miss S., to invite her to go bowling with them. After the three of them left Miss S.'s home, they decided not to go bowling and instead stopped briefly at a bar and then returned to defendant's apartment where, according to Miss S., defendant raped her. After defendant returned Miss S. to her home, she told a friend what had happened and the friend called the Rape Crisis Center. Miss S. then went to the Newport Hospital where she met with members of the Newport police and told them that defendant had raped her.

At approximately 10:20 p. m. on May 11, Officer Edmund E. Sullivan of the Newport police department received a message over his car radio instructing him and his partner to "pick up" defendant for an investigation. The officers went to defendant's house where they were met by two other officers. The four officers then went up to defendant's third-floor apartment and knocked on the door. After Officer Sullivan identified himself, defendant opened the door a few inches and was informed that the police wanted him for an investigation. When defendant asked what the investigation was about, Officer Sullivan told him that he did not know but offered to telephone the police station to find out. The defendant allowed Officer Sullivan to enter the apartment and, upon placing the call, Officer Sullivan learned that defendant was wanted in conjunction with a rape investigation. He then apprised defendant of this fact and asked defendant and Ms. Heup to accompany the police to the station. After they arrived at the police station defendant was placed under arrest and locked in a cell. Later in the evening the police, without having obtained a warrant, required defendant to change his clothing, which they kept as evidence, and to give them hair samples from his head and pubic area.[1]

Prior to trial defendant moved to suppress the hair samples and the evidence obtained from his clothing on the grounds that he had been unlawfully arrested in his home. Although the trial justice found that defendant had neither been placed in custody nor arrested at the time he left his apartment, he suppressed the hair samples taken from defendant's body because the police had obtained them without a search warrant. With regard to defendant's clothing, however, the trial justice ruled that the likelihood that the evidence could have been destroyed by defendant while in his cell created an exigent circumstance that justified its warrantless seizure. Accordingly, the trial justice denied the motion to suppress the pubic hair that had been obtained from defendant's underwear. The jury ultimately found defendant guilty of rape, and he now appeals from the judgment of conviction subsequently entered by the Superior Court.

What we must first determine is the point at which defendant was arrested and whether the arrest conformed to the Fourth Amendment. We note at the outset that we have assumed for purposes of this discussion that the police had probable cause to arrest defendant after Miss S. identified him. In attempting to ascertain whether a person was arrested at a given time, we look to several factors, including the following: the extent to which the person's free-

1. The defendant's clothing was later examined by an FBI agent who testified that a pubic hair found in defendant's underwear had the same characteristics as hair samples taken from the victim, Miss S.

dom of movement has been curtailed and the degree of force used by the police, *United States v. Beck*, 598 F.2d 497, 500–01 (9th Cir. 1979); the belief of a reasonable innocent person in the same circumstances, *Hicks v. United States*, 382 F.2d 158, 161 (D.C.Cir.1967) (quoting *United States v. McKethan*, 247 F.Supp. 324, 328 (D.D.C. 1965)); and whether the person had the option of not going with the police, *Bridges v. United States*, 392 A.2d 1053, 1056 (D.C. App.1978).

■ After considering these factors in light of the circumstances of the case now before us, we are of the opinion that defendant was arrested in his apartment when the police asked him to accompany them to the police station. *See State v. Dufour*, 99 R.I. 120, 127, 206 A.2d 82, 86 (1965) (defendant under arrest when taken to station for questioning, regardless of whether he was requested or ordered to go). There is little evidence in the record that would distinguish the police conduct here from a traditional arrest. The police did not attempt to question defendant before asking him to leave with them, nor did they inform him either that he was not under arrest or that he was free to remain at home. *See Dunaway v. New York*, 442 U.S. 200, 212, 99 S.Ct. 2248, 2256, 60 L.Ed.2d 824, 835–36 (1979).

From the moment the police entered the apartment and informed defendant that he was wanted for an investigation his freedom of movement was to some degree restricted. Although the trial justice found that the police did not force defendant to accompany them, the mere presence of the four officers at defendant's home at such a relatively late hour constituted a sufficient show of force as would likely compel obedience to the request to leave with them. A reasonable man confronted with these circumstances would likely believe that he had been placed under arrest while in the apartment. We therefore hold that the trial justice erred in ruling that, on the facts as he found them, defendant had not been arrested in his apartment.

■ In order for the arrest to have been lawful, the police officers must have entered defendant's apartment pursuant to an arrest warrant, exigent circumstances, or defendant's consent. *Payton v. New York*, —— U.S. ——, ——, 100 S.Ct. 1371, 1374–75, 63 L.Ed.2d 639, 644 (1980).[2] Because the police had not obtained a warrant and there was no exigency, the dispositive factor is whether defendant consented to the entry. What we must determine is whether, by admitting Officer Sullivan into his apartment to use the telephone, defendant consented as well to the entry for the purpose of arresting him.

■ When seeking to justify a search or seizure on consent grounds, the state must prove that the consent was "freely and voluntarily given." *See Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797, 802 (1968); *Palmigiano v. Mullen*, R.I., 377 A.2d 242, 246 (1977). It seems to us that consent to enter one's home to make a routine felony arrest cannot be deemed free or voluntary unless the person said to be consenting is aware of the purpose for which the police seek to enter.[3] *See United States v. Phillips*, 497

---

**2.** In furtherance of a doctrine foreshadowed by *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), the Supreme Court in *Payton v. New York*, —— U.S. ——, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), unequivocally held that absent exigent circumstances, an arrest without a warrant may not be effectuated within the suspect's dwelling house. In so doing, the Court recognized that twenty-four states permitted such arrests without a warrant for felonies and that there was a disagreement on the subject by the great common-law writers. Nevertheless, the Court determined that a warrantless felony arrest in a nonemergency situation within a dwelling house was forbidden by the Fourth and Fourteenth Amendments. We recognized these principles and anticipated the *Payton* doctrine in *Palmigiano v. Mullen*, R.I., 377 A.2d 242 (1977).

**3.** We are not here dealing with a situation in which an undercover police officer obtains consent to enter a person's home by deception (that is concerning his true identity) and subsequently arrests the person who allowed him to enter. There is no constitutional infirmity in such a situation. *See Lewis v. United States*, 385 U.S. 206, 208–09, 87 S.Ct. 424, 426, 17

F.2d 1131, 1135 n.4 (9th Cir. 1974). The notion of a free and voluntary consent necessarily implies that the person knows what it is he is allowing the police to do.[4]

■ Here defendant allowed the police into his home for the purpose of using his telephone. One cannot, consistently with the Fourth Amendment, extrapolate from this act a general consent that would legitimize any subsequent police conduct. The implications of such a holding are deeply troubling to us. Were we to find that the entry into defendant's apartment was consensual, we would be sanctioning a procedure whereby the police could circumvent the warrant requirement for an arrest in the home by initially entering the home for some innocuous reason and then seizing the person as soon as they were admitted. We are unwilling to so compromise the sanctity of the home from unreasonable government intrusion.

■ We therefore find that the warrantless entry into defendant's apartment to arrest him was nonconsensual and violated his rights under both the Fourth Amendment and art. I, § 6 of the constitution of Rhode Island. The arrest in defendant's apartment was necessarily unlawful as well. *See Payton v. New York*, —— U.S. at ——, 100 S.Ct. at 1374–75, 63 L.Ed.2d at 644.

■ Our determination that defendant was unlawfully arrested raises the issue of whether the evidence subsequently obtained from defendant's clothing should have been suppressed. We reject the state's contention that, assuming that defendant had been unlawfully arrested in his apartment, the evidence was obtained incident to a lawful second arrest at the police station.

This case does not present a situation in which a second arrest may be deemed lawful because it was made on the basis of information obtained independently of a prior unlawful arrest. *See, e. g., United States v. Walker*, 535 F.2d 896, 898–99 (5th Cir. 1976). Here, the information giving the police cause to arrest defendant at the police station was identical to the information they possessed at his apartment. The only factor distinguishing the two arrests was the location at which they were made. As we have stated, because the police lacked any justification to enter defendant's apartment, the arrest made therein was unlawful. Because the police retained custody of defendant from the time they left his apartment until the time he was rearrested at the police station, the state cannot argue that the second arrest was independent of the first. On the contrary, it was only because of the unlawful arrest that the police were able to move defendant to a public place where they could arrest him on the basis of probable cause alone. We therefore find that the second arrest, being irremediably tainted by the unlawfulness of the first arrest, was equally unlawful.

■ In determining whether the evidence obtained from the defendant's clothing may be admitted into evidence against him, we must ask whether " 'granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963). The police were able to seize and search the defendant's clothing only because he was in their custody following his unlawful arrest. It is clear to us

L.Ed.2d 312, 315 (1966). Nor are we here concerned with a case in which a police officer is allowed into a home for the purpose of an investigation and while there legitimately discovers evidence of criminal activity which provides independent grounds for arresting the occupants.

4. This is not to say that defendant must have been aware of his right to refuse the police entry. *Schneckloth v. Bustamonte*, 412 U.S. 218, 234, 93 S.Ct. 2041, 2051, 36 L.Ed.2d 854, 867 (1973).

that the police obtained the pubic hair as a direct result of the prior unlawful arrest. The evidence therefore should have been suppressed. *Id.* at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455; G.L. 1956 (1969 Reenactment) § 9–19–25.

The defendant's appeal is sustained, and the judgment of conviction entered in the Superior Court is reversed.