## STATE of Vermont v. George W. SHEEHAN

[768 A.2d 1275]

No. 99-546

December 29, 2000. Defendant George Sheehan appeals his conviction for driving while under the influence of intoxicating liquor, 23 V.S.A. § 1201(a)(2). He argues that the district court erred in refusing to suppress all evidence derived from the warrantless nighttime entry into his home by police. We affirm.

At 8:50 p.m. on February 26, 1999, two uniformed Wilmington police officers responded to a dispatch of a motor vehicle accident without injuries on Route 100. At the scene, they observed a purple Pontiac Grand Am at rest on the side of the snow covered road. No operator, passengers, or keys were in the car. Through a motor vehicle inquiry, the police discovered that the car was registered to defendant's wife. A witness observed the car skid off the road and the operator leave the scene. The witness gave police a description of the operator and shared his belief that the operator was intoxicated. Defendant's daughter drove by the scene and reported that her father regularly drove the car, although her mother was the registered owner. The daughter expressed concern for her father's safety.

At approximately 10:00 p.m., the police arrived at defendant's home and through a window observed a man inside matching the description of that given by the witness. The officers knocked at defendant's door, identified themselves, requested defendant to identify himself and asked if they could come inside to talk to him.

Defendant identified himself and allowed the officers inside his home responding "sure, come on in." Once inside, the officers asked defendant if he was okay, and he responded that he was. The officers observed defendant's eyes to be watery, and they smelled the odor of intoxicating beverages on his breath. Defendant was unsteady and swaying. The officers inquired about defendant's activities earlier in the evening. Defendant became upset and asked what the police were talking about. One officer told defendant that they had removed his vehicle from a field on Route 100. Again, defendant asked what the police were talking about. One officer asked defendant what type of car he drove. Defendant started to say "Pontiac" but stopped himself. The officer completed the word and defendant added "grape colored." The officers asked defendant where the car was located, and he responded that it was in the garage. The three walked outside the house to the detached garage, but the vehicle was not there. Defendant then led the officers back into the house. After this second entry, the officers advised defendant of their suspicion that he had been driving while intoxicated. They asked if he had been drinking and when he had arrived home. Defendant responded that he had his last drink at around 6:30 p.m. and that he had been home since 6:30 p.m. The officers asked if they could perform field sobriety tests on defendant. Defendant refused and was taken into custody and processed for DUI. He consulted with counsel before supplying a breath sample of .17.

Defendant moved to suppress all evidence derived from the warrantless entry and arrest in his home contending it violated Chapter I, Article Eleven of the Vermont Constitution because no exigency existed and his consent was obtained by misrepresentation. The court denied the motion concluding that there was no constitutional violation as defend-

ant consented to the police officers' entry and there was no evidence that the consent was not voluntary. Defendant entered a conditional plea of guilty, pursuant to V.R.Cr.P. 11(a)(2), to DUI in violation of 23 V.S.A. § 1201(a)(2).

On appeal, defendant raises two issues: (1) does Article Eleven prohibit a warrantless misdemeanor arrest in the home absent exigent circumstances or voluntary consent; and (2) is a suspect's consent free and voluntary if he is not informed of the purpose for which the police seek to enter his home at ten o'clock at night. Resolution of both issues turns on whether defendant's consent was voluntary. "[T]he inquiry in a consent search context is restricted to whether the consent was voluntary, not whether there was a 'knowing' and 'intelligent' waiver of a constitutional right." *State v. Zaccaro*, 154 Vt. 83, 88, 574 A.2d 1256, 1259 (1990) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 241-42 (1973)). Voluntariness is a question of fact to be determined by the totality of all the surrounding circumstances. *Id.* The State bears the burden of proving that the consent was not the product of duress or coercion. *Id.* (citing *Schneckloth*, 412 U.S. at 248). In determining the totality of the circumstances, we have considered the scope of the invitation and whether the search exceeded the scope. See *id.* at 91, 574 A.2d at 1261.

Although conceding that his consent was not coerced or obtained by duress, defendant contends the police deceived him because their request to enter the home to talk with him was a pretext to gain entry to arrest him. The court found that the police did not believe they had probable cause to arrest defendant before they entered his residence. Rather than seek entry to effect an arrest, the police requested entry for the purpose of talking to defendant. We uphold the court's finding because it is supported by the evidence and is not clearly erroneous.

*State v. Beckley*, 157 Vt. 446, 450, 600 A.2d 294, 296 (1991).

Under the totality of the circumstances here, the court was correct in concluding that defendant's consent was voluntary. The police did not exert any force or pressure to gain entry. Appearing in uniform, the police identified themselves, then asked for defendant's consent to enter the residence so that they could talk to him. The scope of the conversation was not limited or defined. Defendant did not ask the police why they wanted to enter his home or for what purpose they intended to talk. On notice that two uniformed police officers wanted to engage him in an unrestricted dialogue, defendant responded by inviting them into his home. Once inside, the police acted within the scope of their broad invitation and did precisely what they said they would, talk to defendant. Nothing about the police officers' behavior suggests that they engaged in trickery or misrepresented their purpose in order to gain entry into defendant's home. Defendant did not ask the police to leave once alerted that they were investigating an accident involving his vehicle. On the contrary, after walking outside with the officers, defendant again allowed them inside his home. The court did not err in finding that defendant voluntarily consented to the police entry into his home. See *Zaccaro*, 154 Vt. at 88, 574 A.2d at 1259.

Defendant argues that *Zaccaro* is inapplicable here because its holding is limited to the situation where undercover officers conceal their true identities and request and gain entry to engage in illegal activity. In *Zaccaro*, the defendant challenged the voluntariness of his consent because he was unaware of the true identity of the undercover officer. Because the undercover officer accepted the general invitation to enter defendant's residence to engage in illegal activity, we concluded the defendant "impliedly consented to a 'search' of his home within the

scope of his invitation." *Id.* at 90, 574 A.2d at 1261. We did not hold that an invitation to engage in illegal activity was a prerequisite to a voluntary consensual search. Instead, such an invitation merely defined the extent of the search and negated the defendant's claim that the officer's concealment of her true identity made the consent involuntary.

The cases relied on by defendant are inapposite. Consent was not at issue in *Welsh v. Wisconsin*, 466 U.S. 740 (1984). The defendant's stepdaughter, not defendant himself, granted entry to the residence. Because the consent issue was never resolved below, the high Court assumed there was no consent and proceeded to its exigency analysis. *Id.* at 743 n.1. Because there was no consent and no exigency, the Court held that the nighttime entry into the petitioner's home to arrest him for a civil traffic offense was prohibited by the Fourth Amendment.

The decision in *McCall v. People*, 623 P.2d 397 (Colo. 1981), is also unavailing. In *McCall*, the police, with the input of the district attorney's office, devised a plan to arrest defendant and his two co-conspirators separately and without an arrest warrant in their respective homes. The court held that "[w]here, as here, entry into the home is gained by a preconceived deception as to purpose, consent in the constitutional sense is lacking." *Id.* at 403. As discussed above, there was no preconceived deception here.

Defendant's reliance on *State v. Bailey*, 417 A.2d 915 (R.I. 1980), is also misplaced. In *Bailey*, the defendant admitted police for the limited purpose of using his telephone. After making their call, the police arrested defendant. From this limited invitation, the court refused to "extrapolate . . . a general consent that would legitimize any subsequent police conduct." *Id.* at 919. Here, the scope of defendant's consent was sufficiently broad to encompass inquiry into his activities during the evening and whether and

how much he had been drinking. The officers did not enter defendant's home to conduct an arrest, but rather to talk with defendant. We find defendant freely and voluntarily allowed officers into his home.

Once lawfully across defendant's threshold, the police observed signs of defendant's intoxication warranting an arrest of defendant therein. V.R.Cr.P. 3(a)(5). That the arrest occurred within defendant's home does not make it unlawful.

*Affirmed.*