2004 VT 23

**STATE of Vermont v. Peggy A. STEVENS**

[848 A.2d 330]

No. 02-447

¶ 1. March 10, 2004. Defendant Peggy Stevens appeals an order from the Windsor District Court denying her motion to suppress evidence of the condition of animals seized pursuant to 13 V.S.A. § 354(b)(3). The court found that defendant consented to the search of the animals and, in any event, the search and seizure was justified by exigent circumstances. The court also found that defendant failed to timely seek waiver of a requirement to post security to avoid forfeiture of the animals. We conclude that the search was consensual and that defendant waived her opportunity for the animals to be held in custodial care, and affirm.

¶ 2. There is no dispute about the underlying facts. On August 7, 2001, a neighbor was passing by defendant's home. It was an extremely hot day, and the neighbor was aware that defendant kept numerous animals in a kennel-like structure on her property. Concerned that the animals were overheating, he decided to check the kennel. When he inspected the kennel, he found the windows nearly closed and the one fan he could see inoperative, and he heard the animals whimpering. He promptly called the Bethel State Police.

¶ 3. Sergeant Jocelyn Stohl and Trooper Peter Gravaltis responded to the call. Sergeant Stohl introduced herself and explained she was there to check the animals. Appellant stated she knew the police would be coming by, and Stohl responded, "then it shouldn't be a problem." Defendant then went into her house, retrieved the kennel key, and unlocked the door. At no time did Stohl inform defendant she could refuse the inspection, nor did Stohl obtain verbal or written consent to enter the kennel.

¶ 4. Inside the kennel, Stohl found nineteen animals. Most of the kennel windows were closed, the fans inside the kennel provided limited air circulation, a strong ammonia smell filled the air, and the outside temperature exceeded ninety degrees. The animals were panting, and the cats and small dogs could not reach their water. After checking the kennel, Stohl asked defendant if there were additional animals inside defendant's home. Defendant told Stohl there were, and Stohl asked if she could see them. Inside defendant's home, Stohl found twenty-four animals kept in padlocked cages in a small room. No windows were open, no fans were inside, many of the animals were without water, the cages were dirty, and a heavy ammonia odor was present.

¶ 5. After her inspection of defendant's kennel and home, Stohl determined the animals required protective custody. Pursuant to 13 V.S.A. § 354(b)(3) (an officer who determines an animal's life is in jeopardy may seize the animal without a warrant), Stohl removed most of defendant's animals. Two days later, Stohl returned to defendant's home with a search warrant and seized the remaining animals.

¶ 6. Defendant was charged with six counts of cruelty to animals under 13 V.S.A. § 352(4). The State then moved

under § 354(d) "for an order requiring [defendant] to forfeit any and all rights in the animal[s] prior to final disposition of the criminal charge." Pursuant to State's motion, a hearing was held in the Windsor District Court. At the hearing, defendant opposed the State's motion arguing that Stohl's initial search of her kennel was in contravention of her Fourth Amendment rights. Specifically, defendant argued that this was a warrantless search and none of the exceptions to the warrant requirement applied because defendant did not consent to the search and Stohl did not act pursuant to emergency circumstances. Consequently, defendant contended that all evidence of the animals should be suppressed as derivative of the initial illegal search and her animals should be returned.

¶ 7. The district court denied defendant's motion to suppress, finding both that defendant consented to the search and that Stohl acted under emergency circumstances. Accordingly, the court granted the State's motion and ordered that defendant forfeit the animals. Under 13 V.S.A. § 354(f), if a criminal defendant posts a $30.00 per animal security deposit within forty-eight hours after the hearing, the seized animals will remain in custodial care until the disposition of the criminal charges. This requirement can be waived by the court for good cause shown, but if the requirement is not waived and the security deposit is not paid, the court, upon motion by the State, must order the animals immediately forfeited. *Id.*

¶ 8. In this case, defendant filed a motion to waive the security deposit requirement six days after the district court's decision was issued. The district court denied defendant's motion as untimely, found there was no good cause for defendant's failure to pay the security deposit, and ordered the animals immediately forfeited. Following a jury trial, defendant was acquitted on all six counts

of cruelty to animals.* This appeal followed.

¶ 9. In this appeal, defendant argues that the district court erred because: (1) defendant did not consent to the initial search; (2) Stohl did not act pursuant to emergency circumstances; and (3) defendant's motion to waive the security deposit was timely. Because defendant's counsel conceded at oral argument that the motion to waive the security deposit was untimely, we address the third issue only summarily.

¶ 10. Recently, in *State v. Lawrence*, 2003 VT 68, ¶ 9, 175 Vt. 600, 834 A.2d 10 (mem.), we explicitly adopted a two-step approach for reviewing appeals from denials or grants of motions to suppress: "[W]e will apply a clearly erroneous standard to the trial court's underlying historical facts, while reviewing the ultimate legal conclusion . . . de novo." We employ the *Lawrence* standard in considering the issues before us.

¶ 11. The State grounds the validity of the search of the kennel and house first on defendant's consent. "[T]he inquiry in a consent search context is restricted to whether the consent was voluntary, not whether there was a 'knowing' and 'intelligent' waiver of a constitutional right." *State v. Zaccaro*, 154 Vt. 83, 88, 574 A.2d 1256, 1259 (1990) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 241-42 (1973)). Voluntariness is a question of fact, and

---

* Although defendant was acquitted, she argues that the constitutionality of the search remains a live issue because, if the search was invalid, she would be entitled to the return of her animals from the current owners. The State has not contested this argument or claimed that the appeal is moot. Accordingly, we reach the merits of the constitutional issue without addressing mootness or the validity of defendant's argument that she would be entitled to return of the animals if she prevails.

the totality of the circumstances are considered when determining whether consent was freely given. *Schneckloth*, 412 U.S. at 227; *State v. Sheehan*, 171 Vt. 642, 643, 768 A.2d 1275, 1277 (2000) (mem.).

¶ 12. Defendant makes three main arguments why there was no consent in this case: the officer never requested consent to search so that defendant was acting in response to an assertion of lawful authority; defendant never affirmatively gave consent; and the officer failed to inform her of her right to refuse consent. As to her first argument, we recognize that granting access in "submission to a claim of lawful authority" is not consent. *State v. Sprague*, 2003 VT 20, ¶ 23, 175 Vt. 123, 824 A.2d 539. Here, however, there was no assertion of lawful authority to inspect the animals without defendant's consent. See *id.* at ¶ 26 (no unlawful seizure occurs based on officer's request at the roadside to operator to exit the vehicle if the officer does not convey a message that compliance is required); 3 W. LaFave, Search and Seizure § 8.2(a) (1996) (collecting cases). The officer's statement did not convey or imply that she intended to search the kennels or house irrespective of defendant's consent.

¶ 13. As to her second argument, we conclude that the record is clear that defendant gave consent by her action of going into the house, obtaining the key to the kennel and opening the kennel. Consent can result from conduct which would be understood by a reasonable person as conveying consent. See *Harris v. Carbonneau*, 165 Vt. 433, 437, 685 A.2d 296, 299 (1996); see also *United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999) ("Non-verbal conduct, considered with other factors, can constitute voluntary consent to search."); *United States v. Turbyfill*, 525 F.2d 57, 59 (8th Cir. 1975) (consent to enter dwelling implied from acts of opening door and stepping back); *State v. Copeland*, No. 01-1864,

2003 WL 553996, at *3 (Iowa Ct. App. 2003) ("Consent does not necessarily have to be given verbally but may be found in gestures and non-verbal conduct as well."). In this instance, defendant's conduct in enabling the officers to enter the kennel clearly showed her consent to such entry.

¶ 14. On this point, defendant argues that we should require an explicit written statement of consent. The obtaining of such a statement may be good police practice, but it is not constitutionally required. Our past decisions have relied on oral expressions of consent, without a writing, see *Sheehan*, 171 Vt. at 643, 768 A.2d at 1277; *Zaccaro*, 154 Vt. at 90, 574 A.2d at 1261, and we see no reason to distinguish between conduct that conveys consent and a verbal statement of consent. Defendant also argues that we must consider defendant's conduct in the context of the court's finding that she acted with reluctance and disgust. While these findings might go to whether defendant acted voluntarily, as discussed below, they do not undermine the conclusion that she gave consent.

¶ 15. Finally, defendant argues that considering all the factors, her consent was not voluntary. She particularly relies upon three factors. First she emphasizes that Sergeant Stohl never informed her she could refuse Stohl's request. Although Stohl's failure to put defendant on notice of her right to refuse the search is a factor for us to consider, it is merely one factor and not a dispositive one in this case. See *Sprague*, 2003 VT 20, at ¶ 29 ("while a suspect's knowledge of the right to refuse is not essential to a finding of consent, it is plainly a factor to be taken into account"). As we discuss below, we think the factors showing that the consent was voluntary outweigh those to the contrary.

¶ 16. Defendant also argues, relying on *Sprague*, that the initial search's setting was inherently coercive. In *Sprague* we considered "whether a reasonable person

in defendant's position would have felt free to refuse a state trooper's request that he exit his vehicle." 2003 VT 20, at ¶ 1. In concluding that a reasonable person would not have felt free to refuse, we found it persuasive that this was a traffic stop, that the officer's request defendant exit the vehicle came immediately after his request to see defendant's license and registration, and that the officer gave no indication that defendant could refuse the request. *Id.* at ¶¶ 28-29. Here, defendant argues the setting was inherently coercive because her property had been searched several times before and, therefore, she felt she could not refuse Stohl's request. This argument is unpersuasive. In previous searches, the animals' care was found satisfactory, and there was never any indication that defendant would suffer negative consequences if she refused a future search. We cannot conclude here that an inherently coercive environment prevented voluntary consent to a search.

¶ 17. Nevertheless, defendant contends that, as in *Sprague*, she did not have enough time to consider Stohl's request, and therefore her consent was not freely given. The facts are very different than those in *Sprague*. Defendant's response to the officers indicated that she knew they were coming and, therefore, had time to determine her actions. Moreover, defendant left the officer's presence when she went to retrieve the kennel keys, and, during that time, she had an opportunity to fully consider the officer's request to search. We cannot conclude that defendant was forced to act in haste.

¶ 18. In *State v. Badger*, 141 Vt. 430, 444, 450 A.2d 336, 344 (1982), we found that a sixteen-year-old boy's consent to seize clothing and shoes as evidence was not voluntary because of his youth, his emotional state, the misleading statements of the police, the failure to give him *Miranda* warnings even though he was in custody, and his father's unfamiliarity with the criminal justice system.

We concluded, based on these factors, that consent was obtained in an "inherently coercive atmosphere." *Id.* In *Sprague*, we found that defendant's exit from his vehicle at the officer's request was not consensual because an inherently coercive atmosphere existed as a result of the officer's stop of the vehicle, the "request" to exit followed a request, which could not be refused, to show the operator's license and registration, and the officer did not inform the operator that he was free to refuse the officer's request. 2003 VT 20, at ¶¶ 28-29. None of the factors in *Sprague* or *Badger* are present here, with the single exception that the officer here also did not advise that defendant could refuse consent for the search. Defendant acted with disgust and reluctantly, but neither mental state is inconsistent with voluntary consent. Overall, the factors demonstrating voluntariness outweighed those suggesting that the consent was involuntary.

¶ 19. Considering the totality of the circumstances, we conclude the district court correctly found defendant freely consented to the initial search of the kennel. Accordingly, the searches and seizures that followed were valid. We need not reach whether the search was also justified by exigent circumstances.

¶ 20. Defendant's final argument is that the district court erred by denying her motion to waive payment of the required security deposits following the forfeiture hearing. Section 354(f) of Title 13 requires a defendant to post a security deposit of $30 per animal within forty-eight hours of the forfeiture hearing to prevent the immediate forfeiture of seized animals pending final disposition of criminal charges. Here, the forfeiture hearing concluded on August 21, 2002, but the district court did not issue its decision until one week later, on August 28. The court and the parties assumed that, when the forfeiture decision is not made at the conclusion of the hearing, the forty-eight-hour period begins to run

from the date of the decision rather than the conclusion of the hearing. Nevertheless, the court determined that defendant's waiver motion was still untimely because it was not filed within forty-eight hours of the court's August 28 decision. The court also determined that defendant had failed to demonstrate good cause for obtaining a waiver. We uphold the court's ruling that defendant's motion was untimely filed. Assuming that the operative date for the running of the forty-eight-hour period is the one accepted by the district court and the parties in this case — the date of the forfeiture decision — defendant's motion had to be filed by Friday, August 30, 2002.

¶ 21. Defendant's argument that V.R.C.P. 6(e) gave her an additional three days to file the motion is unavailing. Both V.R.C.P. 6 and V.R.Cr.P. 45(e) provide an additional three days to respond within a period of time prescribed by a rule or statute when service is by mail, but those rules were amended more than twenty years ago to clarify that the additional time is not available when service by mail is made by a court rather than a party. See V.R.C.P. 6(e) ("three days shall be added to the prescribed period unless the notice or other paper is served by the court"); V.R.Cr.P. 45(e) (same); see also Reporter's Notes — 1982 Amendment, V.R.Cr.P. 45 ("Subdivision (e) is amended to provide that additional time is not available after service by mail if service is made by the court."). Here, the district court served a copy of its August 28 decision on the same day in accordance with the rules, see V.R.Cr.P. 49(b); V.R.C.P. 5(b), and defendant acknowledged obtaining the decision on August 29. Yet, defendant's motion to waive payment of the deposits was not filed until Tuesday, September 3. Thus, defendant has failed to demonstrate that the court erred by denying her motion as untimely filed. Nor do we find any basis for overturning the district court's decision under V.R.Cr.P. 2, which provides

that the rules "shall be construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay."

*Affirmed.*

Motion for reargument denied April 1, 2004.