NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 96

No. 2016-064

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Franklin Unit, |
| | Criminal Division |
| | |
| Christian Allis | March Term, 2017 |

Robert A. Mello, J.

Heather J. Brochu, Franklin County Deputy State's Attorney, St. Albans, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Marshall Pahl, Appellate Defender, Montpelier, for
  Defendant-Appellant.


PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1. **DOOLEY, J.** Defendant Christian Allis entered a conditional plea to a first offense for driving under the influence (DUI) in violation of 23 V.S.A. § 1201(a)(2), reserving the right to appeal the trial court's denial of his motion to suppress evidence obtained during law enforcement entry into his home. Defendant argues on appeal that the trial court's decision denying his suppression motion was in error because: (1) the police entered his home without consent; and (2) even if there was consent, the State failed to prove that the consent was voluntarily given. We hold that the State failed to meet its burden to prove consent to enter and, accordingly, reverse.

¶ 2. The facts as found by the trial court in defendant's civil suspension hearing may be summarized as follows. On October 5, 2015, a St. Albans police officer responded to a report of a motor vehicle crash at a parking lot in St. Albans. Upon arrival at the scene, the officer observed a pickup truck in a ditch near a telephone pole and tire marks in the gravel that suggested the vehicle had been doing "donuts." Front-end damage to the vehicle indicated that the vehicle had struck the pole before landing in the ditch. The officer checked the license plate registration and identified defendant as the vehicle's owner.

¶ 3. The officer testified that he then went to defendant's residence and, at the door, spoke with defendant's girlfriend, who also lived at the residence. Defendant's girlfriend testified that, upon answering the door, the officer asked for defendant, stating that he was investigating an accident. Defendant's girlfriend told the officer that she would see if defendant was home, though she knew that he was, and then shut the door and called to defendant, who came down to the kitchen. She then returned to the door and opened it, so that from the doorway defendant was visible to the first officer, as well as a second officer that joined him. As she explained in her testimony at defendant's civil suspension hearing: "[Defendant] came down into the kitchen and I had opened the door and I made a gesture to [the officer] that he's right there." She recalled that she then went into the kitchen while the officers asked defendant a few questions from the doorway, and "the next thing I know" the officers were in the kitchen. She did not see them come up the steps leading from the doorway to the kitchen and did not ask them to come in or verbally consent to a request from the officers to enter the residence. Nor did she tell them not to enter or to leave. She did acknowledge that she knew the officers' intent was to speak with defendant when she went to retrieve him.

2

¶ 4. The State did not ask the investigating officer whether he had permission to enter the house; and the officer did not testify to the gesture the girlfriend alleged she made. In fact, he testified that defendant came to the door. The officer testified that defendant appeared to be "heavily intoxicated" and that the officer detected an odor of alcohol. The officer asked defendant to step outside and, after additional questioning, arrested him for DUI and transported him to the station for blood alcohol testing. The test revealed that defendant had a blood alcohol content of 0.348%. The second officer did not testify.

¶ 5. Following a civil suspension hearing, defendant, through counsel, moved to suppress all evidence obtained subsequent to the officers' entrance into his residence. Defendant claimed that the officers' entry into his home was unlawful and that, therefore, the information obtained thereafter must be excluded. The trial court denied defendant's motion in a written ruling, concluding that defendant's girlfriend had "implicitly invite[d]" the officers into the home. The court found as fact that the investigating officer "interpreted her action as inviting him in." This appeal followed.

¶ 6. A trial court's decision on a motion to suppress is a mixed question of fact and law, "that is, whether the factual findings supported by the record lead to the conclusion, that, as a matter of law, suppression of evidence was or was not necessary." State v. Lawrence, 2003 VT 68, ¶ 9, 175 Vt. 600, 834 A.2d 10 (mem.). Thus, our review is two-fold with respect to whether consent was given. We "apply a clearly erroneous standard" to the trial court's factual findings and independently review its ultimate legal conclusion concerning suppression. State v. Stevens, 2004 VT 23, ¶ 10, 176 Vt. 613, 848 A.2d 330 (mem.) (quotation omitted).

¶ 7. Defendant asks us to hold that, as a matter of law, law enforcement may not enter a home unless officers request permission to enter and subjects explicitly grant such permission.

3

Because the investigating officer did not ask to enter defendant's home and there was no explicit grant of permission, the rule defendant requests would decide this case in defendant's favor. But this rule would also require us to disregard the settled rule that "[c]onsent can result from conduct which would be understood by a reasonable person as conveying consent." Id. ¶ 13; see also Harris v. Carbonneau, 165 Vt. 433, 437, 685 A.2d 296, 299 (1996).[1]

¶ 8.    The necessary conduct can vary. In Stevens, the defendant implied consent to search her property when she retrieved the key to a kennel and opened the kennel for law enforcement at their request. Stevens, 2004 VT 23, ¶ 13. And in Harris, the defendant similarly implied consent when she opened an interior door, attempted unsuccessfully to open an exterior door, and then backed her wheelchair out of the way as a process server opened the door and entered. Harris, 165 Vt. at 437, 685 A.2d at 299.

¶ 9.    The Fourth Amendment of the U.S. Constitution protects "[t]he right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures." And Chapter I, Article 11 of the Vermont Constitution guarantees "[t]hat the people have a right to hold . . . their houses . . . free from search and seizure." These provisions are implemented by the rule that a search is typically lawful only with probable cause and a warrant or with the voluntary consent of someone authorized to give such consent. State v. Zaccaro, 154 Vt. 83, 87, 574 A.2d 1256, 1259 (1990); see also Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).

¶ 10.    When the State seeks admission of evidence obtained during a search based on consent, the State bears the burden of demonstrating that someone authorized to consent did, in fact, voluntarily give such consent. State v. Sprague, 2003 VT 20, ¶ 23, 175 Vt. 123, 824 A.2d

---

[1] The parties have not distinguished between the consent necessary to enter a dwelling and the consent to search the dwelling. In light of their position, we do not consider whether a separate consent standard would apply.

4

539 (holding that "[t]he State bears the burden . . . of demonstrating that the consent was freely given"); Florida v. Royer, 460 U.S. 491, 497 (1983) (affirming that "where the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained"); Bumper v. North Carolina, 391 U.S. 543, 548 (1968) ("When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given.").

¶ 11.  In analyzing this case, we start with the facts.  Two witnesses testified to the relevant events.  The State's witness—the investigating officer—testified that defendant came to the door; his testimony did not address the officer's entry into the house.  Without stating so, the court rejected the officer's testimony.  Instead, the court accepted most of the testimony from the other witness—defendant's girlfriend.

¶ 12.  One of the findings could be based only on testimony from the officer: "Although [defendant's girlfriend] had not expressly stated that [the officer] could come into the house, he interpreted her action as inviting him in."  There is no testimony from either witness that supports the last phrase of this finding—that the officer interpreted the girlfriend's action as an invitation to enter.  The finding is clearly erroneous.

¶ 13.  The court followed the above finding with the following finding: "Therefore, [the investigating officer] and another officer walked through the doorway that [defendant's girlfriend] had just opened for him, and they followed her into the entry way, up the short set of stairs and into the kitchen, where the officers met and spoke with the defendant."  The finding is made misleading by the opening word "therefore," suggesting that the entry into the house occurred because the officer interpreted the girlfriend's actions as an invitation.  It also appears to be misleading with respect to timing, specifying that the officer walked through the entry door into

5

the house just after it was opened. In fact, the only evidence was that after the girlfriend opened the door and walked up to the kitchen, a conversation started between defendant and the officers who were standing outside the door. At some point after asking defendant questions, the investigating officer entered the house through the open door and proceeded to the kitchen. While the officer entered the house through an open door, he did not do so just after it was opened and he did not closely follow the girlfriend into the kitchen. He had already "met" defendant through his questioning. While this finding might survive a clearly erroneous challenge, when properly understood in light of the evidence, it provides no support for the trial court's decision that consent for entry had been granted.

¶ 14. The evidence of the girlfriend's actions was sparse, and the court made only three findings regarding her actions: (1) the girlfriend called out to defendant, telling him there was a policeman at the door to see him; (2) she opened the front door and motioned towards defendant and said, "he's right here"; and (3) she walked into the kitchen. Based on these facts, the court concluded: "By opening the door, indicating that she had brought the defendant downstairs, and then walking into the kitchen, she was implicitly inviting [the investigating officer] inside their home." The court did not find that the girlfriend, as the State argues, gestured for the police to enter the home. In fact, the gesture—whatever it was intended to be—apparently played no part in the trial court decision.

¶ 15. The State and defendant have cited numerous decisions related to implied consent, showing that the result in each is controlled by the facts. Perhaps the closest case for the State is Harris v. Carbonneau, a civil case in which a process server was sued for entry without consent into plaintiff's home to serve process. In that case, the process server knocked on a front storm door and identified himself, and the plaintiff, who was in a wheelchair, opened the inner door, but

6

could not open the storm door despite trying. Plaintiff pulled her wheelchair back to enable the process server to open the storm door and enter the house. We held that the facts were sufficient to enable the question of consent to go to the jury. Harris, 165 Vt. at 437, 685 A.2d at 299.

¶ 16. There are significant differences between this case and Harris. For example, the purpose of plaintiff's action in Harris in moving the wheelchair backwards was clear—to allow the process server to enter. In this case, the girlfriend's reason for walking away from the door was unclear, and could be explained as enabling communication between the officer and defendant without the girlfriend between them, exactly, at least in the beginning, what occurred.

¶ 17. The greatest difference, however, is that in Harris the factfinder was the jury, charged with determining whether consent had been given. The jury could have decided that question with either result. Here, we must arrive at the result relying on the trial court's findings of historical fact that are supported by the evidence and making our own decision on the result to reach. We are not bound by the trial court's conclusion on this question, though we are bound by its determination of historical facts to the extent the facts found are not clearly erroneous. This constraint is of limited significance here because, as we held above, key findings on which the trial court apparently relied are clearly erroneous.

¶ 18. The State had the burden of production and persuasion that implied consent to enter was present. It certainly did not meet its burden of production, but we must look at all the evidence, here mostly defendant's evidence. We conclude that there is not sufficient evidence of implied consent. As a matter of law, the girlfriend's actions were not sufficient to convey to a reasonable observer that the observer had received consent to enter the house of defendant and the girlfriend. Like the trial court, we give no weight to the "gesture" in our decision, concluding it is so

7

ambiguous that it does not support the position of either party.[2] The fact that there is no evidence that the officer believed that the actions of the girlfriend provided consent reinforces our conclusion. The absence of evidence on this point is a glaring weakness in the State's case.

¶ 19. Defendant also argues that the State failed to prove that any consent was voluntary. Because we hold that the State did not meet its burden to prove that defendant's girlfriend gave

---

[2] The dissent, while acknowledging the findings error in the trial court decision, argues that we should remand for a new hearing and findings on whether the girlfriend's gesture conveyed consent to enter by implication. In our view, the dissent would misapply the standard of review applicable to the determination of whether the officers had consent to enter the house. As we stated above, supra, ¶ 6, the standard of review has two parts—on questions of historical fact, we accept the trial court's findings of fact unless they are clearly erroneous; on mixed questions of fact and law, our standard of review is de novo. In this case, the trial court made a finding of fact with respect to the "gesture," finding that defendant's girlfriend "opened the door, motioned toward the defendant saying, 'he is right here.' " We agree that this finding is supported by the evidence and not clearly erroneous.

Our difference with the dissent is about the "meaning" of the "motion" or "gesture." The dissent wants a remand so the trial judge can go on to find whether the motion or gesture impliedly conveyed consent to enter, while recognizing that the question it wants the trial court to resolve is whether "under the totality of the circumstances, a reasonable person would have believed that the girlfriend gave consent to enter." Post, ¶ 25. We agree that the governing test is objective, but disagree that the question is wholly one of fact. Indeed, this is a classic mixed question of fact and law—it represents the ultimate question on which a ruling on the motion to suppress must turn. On this question, the applicable standard of review is de novo, and the trial court's answer to this question is entitled to no deference. A remand to obtain an answer to the dissent's question could not change the result.

We also reiterate that we conclude that the trial court impliedly answered this question by not relying on the motion or gesture in reaching its original decision that the girlfriend impliedly consented to the entry. We are satisfied that if the trial court had concluded that the motion or gesture conveyed consent to entry, the court would have explicitly included that rationale.

Finally, we cannot endorse the dissent's argument that where a finding of fact is clearly erroneous, the remedy is to send the case back for a new evidentiary hearing. The underlying issues in this case were clear from the beginning, and the State relied heavily on the girlfriend's gesture, while presenting evidence that the officer never entered the house at all. Now that the consequences of the State's actions are clear, it may be that the State would like to start over with new evidence in a new evidentiary hearing. There is no ground or precedent for such a remedy.

8

the investigating officer implied consent to enter defendant's home, we need not reach this argument.

Reversed.

FOR THE COURT:

_____

Associate Justice

¶ 20.   **EATON, J., dissenting.**   I disagree with the majority in two fundamental respects and I therefore dissent.  First, the majority fails to give the trial court the deference it is owed as the factfinder and instead draws its own factual conclusions.  Second, relying on those factual conclusions, the majority then proceeds to misapply the law as it relates to consent to enter a home.

¶ 21.   At the most basic level, this case hinges on one question: would a reasonable person have understood defendant's girlfriend's gesture as giving the officer consent to enter their home?  See State v. Stevens, 2004 VT 23, ¶ 13, 176 Vt. 613, 848 A.2d 330 (mem.) ("Consent can result from conduct which would be understood by a reasonable person as conveying consent.").  The answer to this question matters because the girlfriend's course of conduct was the basis from which the investigating officer entered defendant's home.  If the girlfriend's gesture objectively indicated that she was inviting the officer to enter the home, she consented to his entry and the subsequent search was lawful.  If, on the other hand, the girlfriend's gesture did not objectively indicate that she was inviting the officer to enter the home, she did not consent to his entry and the subsequent search was unlawful.  The problem for this Court, of course, is that we were not present to witness the girlfriend's gesture, nor were we present to hear testimony from those who were—the girlfriend and the officer.

9

¶ 22. In State v. Lawrence, we first adopted a two-step approach for reviewing appeals from motions to suppress: we apply "a clearly erroneous standard to the trial court's underlying historical facts," and if those facts are not clearly erroneous, we review the trial court's legal analysis de novo. 2003 VT 68, ¶ 8, 175 Vt. 600, 834 A.2d 10 (mem.). As we explained in Lawrence, "[d]eferential appellate review of a trial court's factual findings on motions to suppress is appropriate because determining the weight of evidence and credibility of witnesses is primarily for the trier of fact." Id. This standard does not leave room for what the majority does in this case: substitute its judgment for that of the trial court. The majority is correct that the burden is on the State to put in sufficient evidence from which the court can make a legal conclusion about consent to enter, but it does not follow that where the trial court makes clearly erroneous findings, the State must suffer the consequences. See State v. Freeman, 2004 VT 56, ¶ 7, 177 Vt. 478, 857 A.2d 295 (describing standard and explaining that "[i]f the trial court's findings are not clearly erroneous, we will then review the legal issues . . . de novo" (emphasis added)). Rather, where an appellate court concludes that the trial court's underlying historical facts are not supported by the record, the appropriate remedy is to remand the case to the trial court for a new hearing to make the necessary factual findings, not to suppress the evidence. See, e.g., Tarver v. State, 961 So. 2d 1094, 1096-97 (Fla. Dist. Ct. App. 2007) (remanding for fact finding where "trial court made no factual findings" on relevant historical fact because appellate court "is not a fact-finding body and may not weigh the evidence to resolve conflicts"); State v. D'Amour, 834 A.2d 214, 219 (N.H. 2003) (reviewing record and, after finding that trial court made clearly erroneous factual finding, concluding that "we are compelled to remand this matter to the trial court" for new hearing if necessary to make factual findings necessary to resolve legal issue); State v. Mendoza, 365 S.W.3d 666, 673 (Tex. Crim. App. 2012) (remanding motion to suppress to trial court after concluding

that findings were ambiguous and reasoning that "[j]ust as the trial judge was best positioned to evaluate the officer's credibility at the hearing, so she is in the best position to clarify her ambiguous factual findings and make an explicit credibility determination," which "should dispel any confusion about precisely what historical facts the trial judge found").

¶ 23. With that understanding of the applicable standard of review in mind, I turn to the facts of this case. As the majority notes, the trial court took testimony from the girlfriend and from the investigating officer but did not make an express finding about the credibility of either witness. Ante, ¶ 11. The majority is also correct that the investigating officer did not expressly testify that he interpreted defendant's girlfriend's gesture as an invitation to enter the house. Id. However, it does not follow from those two facts that the court did not have before it sufficient evidence from which it could have made an express finding about the meaning of the girlfriend's gesture. Rather, the court was entitled to base its findings not only on testimony, but also on inferences that it fairly drew from the testimony. See State v. Weisler, 2011 VT 96, ¶ 72, 190 Vt. 344, 35 A.3d 970 (Dooley, J. concurring) ("The power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the trial court." (quotation omitted)). And based on the record before us, that is what the court here did.

¶ 24. The testimony established that an officer came to defendant's house, asked defendant's girlfriend if defendant was home, and told defendant's girlfriend that he wanted to speak to defendant. This conversation took place at the foot of a few stairs that led into the kitchen of defendant's home. She told the officer she would look for defendant, although she also testified that she knew he was home. She then closed the door, leaving the officer outside. When she called out to defendant, he came down to the kitchen. Defendant's girlfriend then opened the door, making a gesture to the first officer and a second who had joined him outside, which she testified

11

she made with the intention of signaling "that [defendant] is right there." She then turned from the officers and went up the stairs into the kitchen. The first officer asked a few questions of defendant from where he was standing outside the house and then the officer came up the stairs into the kitchen. The girlfriend did not verbally grant or deny either officer permission to enter. When the officer told the girlfriend that he wanted to speak to defendant, she told the officer she would look for him and closed the door. It cannot be gainsaid that a factfinder could reasonably interpret the girlfriend's action as an indication that the officer was not welcome to enter at that time, although there was no testimony to this effect. Thereafter, she returned, opened the door, made a gesture, and turned from the officer and went up the stairs into the kitchen, leaving the door to the house open behind her.

¶ 25. That the officer interpreted her actions as giving him consent to enter was a reasonable inference for the court to make. See Stevens, 2004 VT 23, ¶ 11; United States v. Turbyfill, 525 F.2d 57, 59 (8th Cir. 1975) ("An invitation or consent to enter a house may be implied as well as expressed. There was no error in the determination of the district court that the action of [an individual with authority to consent] in the opening of the door and stepping back constituted an implied invitation to enter."); State v. Copeland, No. 01-1864, 2003 WL 553996, *1, 3 n.2 (Iowa Ct. App. Feb. 28, 2003) (concluding that there was "ample authority to find [defendant's] implied, nonverbal consent" to enter where officers knocked on door and defendant "opened the door further and stepped back out of the way"). Based on the court's interpretation of the gesture in light of the girlfriend's course of conduct, it was appropriate for the court to conclude that under the totality of the circumstances, a reasonable person would have believed that the girlfriend gave consent to enter. See Stevens, 2004 VT 23, ¶ 11. It is not our role as an appellate court to reinterpret the information that was before the trial court, and on that basis alone

12

I would affirm the court's determination that the girlfriend gave consent and that the ensuing search was therefore not unlawful.

¶ 26.    Nevertheless, even if I were to agree with the majority that the trial court's findings about the meaning of the girlfriend's gesture were clearly erroneous, ante, ¶ 12, the appropriate remedy here is to remand the case to the trial court for a new hearing so that the court can make an express finding about the meaning of the gesture.  This is because, as the majority recognizes, the import of the gesture effectively controls the outcome of this case.  Ante, ¶ 18.  And absent a finding about the meaning of the gesture, there is no basis from which we can engage in the reasoned de novo review we described in Lawrence.  2003 VT 68, ¶ 8; see also Tarver, 981 So. 2d at 1096-97 (remanding for factfinding on motion to suppress where historical facts were ambiguous); D'Amour, 834 A.2d at 219 (same); Mendoza, 365 S.W.3d at 673 (same).  Thus, I would either affirm the trial court's decision or remand for additional factfinding, and accordingly, I dissent.

<div style="margin-left:50%; border-top:1px solid black;"></div>

Associate Justice