EATON, J., dissenting.
¶ 20. I disagree with the majority in two fundamental respects and I therefore dissent. First, the majority fails to give the trial court the deference it is owed as the factfinder and instead draws its own factual conclusions. Second, relying on those factual conclusions, the majority then proceeds to misapply the law as it relates to consent to enter a home.
¶ 21. At the most basic level, this case hinges on one question: would a reasonable person have understood defendant's girlfriend's gesture as giving the officer consent to enter their home? See State v. Stevens, 2004 VT 23, ¶ 13, 176 Vt. 613, 848 A.2d 330 (mem.) ("Consent can result from conduct which would be understood by a reasonable person as conveying consent."). The answer to this question matters because the girlfriend's course of conduct was the basis from which the investigating officer entered defendant's home. If the girlfriend's gesture objectively indicated that she was inviting the officer to enter the home, she consented to his entry and the subsequent search was lawful. If, on the other hand, the girlfriend's gesture did not objectively indicate that she was inviting the officer to enter the home, she did not consent to his entry and the subsequent search was unlawful. The problem for this Court, of course, is that we were not present to witness the girlfriend's gesture, nor were we present to hear testimony from those who were-the girlfriend and the officer.
¶ 22. In State v. Lawrence, we first adopted a two-step approach for reviewing appeals from motions to suppress: we apply a clearly erroneous standard to the trial court's underlying historical facts, and if those facts are not clearly erroneous, we review the trial court's legal analysis de novo. 2003 VT 68, ¶ 8, 175 Vt. 600, 834 A.2d 10 (mem.). As we explained in Lawrence, "[d]eferential appellate review of a trial court's factual findings on motions to suppress is appropriate because determining the weight of evidence and credibility of witnesses is primarily for the trier of fact." Id. This standard does not leave room for what the majority does in this *999 case: substitute its judgment for that of the trial court. The majority is correct that the burden is on the State to put in sufficient evidence from which the court can make a legal conclusion about consent to enter, but it does not follow that where the trial court makes clearly erroneous findings, the State must suffer the consequences. See State v. Freeman, 2004 VT 56, ¶ 7, 177 Vt. 478, 857 A.2d 295 (mem.) (describing standard and explaining that "[i]f the trial court's findings are not clearly erroneous, we will then review the legal issues ... de novo" (emphasis added)). Rather, where an appellate court concludes that the trial court's underlying historical facts are not supported by the record, the appropriate remedy is to remand the case to the trial court for a new hearing to make the necessary factual findings, not to suppress the evidence. See, e.g., Tarver v. State, 961 So.2d 1094, 1096-97 (Fla. Dist. Ct. App. 2007) (remanding for fact finding where "trial court made no factual findings" on relevant historical fact because appellate court "is not a fact-finding body and may not weigh the evidence to resolve conflicts"); State v. D'Amour, 150 N.H. 122, 834 A.2d 214, 219 (2003) (reviewing record and, after finding that trial court made clearly erroneous factual finding, concluding that "we are compelled to remand this matter to the trial court" for new hearing if necessary to make factual findings necessary to resolve legal issue); State v. Mendoza, 365 S.W.3d 666, 673 (Tex. Crim. App. 2012) (remanding motion to suppress to trial court after concluding that findings were ambiguous and reasoning that "[j]ust as the trial judge was best positioned to evaluate the officer's credibility at the hearing, so she is in the best position to clarify her ambiguous factual findings and make an explicit credibility determination," which "should dispel any confusion about precisely what historical facts the trial judge found").
¶ 23. With that understanding of the applicable standard of review in mind, I turn to the facts of this case. As the majority notes, the trial court took testimony from the girlfriend and from the investigating officer but did not make an express finding about the credibility of either witness. Ante, ¶ 11. The majority is also correct that the investigating officer did not expressly testify that he interpreted defendant's girlfriend's gesture as an invitation to enter the house. Id. However, it does not follow from those two facts that the court did not have before it sufficient evidence from which it could have made an express finding about the meaning of the girlfriend's gesture. Rather, the court was entitled to base its findings not only on testimony, but also on inferences that it fairly drew from the testimony. See State v. Weisler, 2011 VT 96, ¶ 72, 190 Vt. 344, 35 A.3d 970 (Dooley, J., concurring) ("The power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the trial court." (quotation omitted)). And based on the record before us, that is what the court here did.
¶ 24. The testimony established that an officer came to defendant's house, asked defendant's girlfriend if defendant was home, and told defendant's girlfriend that he wanted to speak to defendant. This conversation took place at the foot of a few stairs that led into the kitchen of defendant's home. She told the officer she would look for defendant, although she also testified that she knew he was home. She then closed the door, leaving the officer outside. When she called out to defendant, he came down to the kitchen. Defendant's girlfriend then opened the door, making a gesture to the first officer and a second who had joined him outside, which she testified she made with the intention of signaling "that [defendant] is right there." She then turned from the officers and went up the *1000 stairs into the kitchen. The first officer asked a few questions of defendant from where he was standing outside the house and then the officer came up the stairs into the kitchen. The girlfriend did not verbally grant or deny either officer permission to enter. When the officer told the girlfriend that he wanted to speak to defendant, she told the officer she would look for him and closed the door. It cannot be gainsaid that a factfinder could reasonably interpret the girlfriend's action as an indication that the officer was not welcome to enter at that time, although there was no testimony to this effect. Thereafter, she returned, opened the door, made a gesture, and turned from the officer and went up the stairs into the kitchen, leaving the door to the house open behind her.
¶ 25. That the officer interpreted her actions as giving him consent to enter was a reasonable inference for the court to make. See Stevens, 2004 VT 23, ¶ 11, 176 Vt. 613, 848 A.2d 330 ; United States v.Turbyfill, 525 F.2d 57, 59 (8th Cir. 1975) ("An invitation or consent to enter a house may be implied as well as expressed. There was no error in the determination of the district court that the action of [an individual with authority to consent] in the opening of the door and stepping back constituted an implied invitation to enter."); State v. Copeland, No. 01-1864, 2003 WL 553996, at *1, 3 n.2 (Iowa Ct. App. Feb. 28, 2003) (concluding that there was "ample authority to find [defendant's] implied, nonverbal consent" to enter where officers knocked on door and defendant "opened the door further and stepped back out of the way"). Based on the court's interpretation of the gesture in light of the girlfriend's course of conduct, it was appropriate for the court to conclude that under the totality of the circumstances, a reasonable person would have believed that the girlfriend gave consent to enter. See Stevens, 2004 VT 23, ¶ 11, 176 Vt. 613, 848 A.2d 330. It is not our role as an appellate court to reinterpret the information that was before the trial court, and on that basis alone I would affirm the court's determination that the girlfriend gave consent and that the ensuing search was therefore not unlawful.
¶ 26. Nevertheless, even if I were to agree with the majority that the trial court's findings about the meaning of the girlfriend's gesture were clearly erroneous, ante, ¶ 12, the appropriate remedy here is to remand the case to the trial court for a new hearing so that the court can make an express finding about the meaning of the gesture. This is because, as the majority recognizes, the import of the gesture effectively controls the outcome of this case. Ante, ¶ 18. And absent a finding about the meaning of the gesture, there is no basis from which we can engage in the reasoned de novo review we described in Lawrence, 2003 VT 68, ¶ 8, 175 Vt. 600, 834 A.2d 10 ; see also Tarver, 961 So.2d at 1096-97 (remanding for factfinding on motion to suppress where historical facts were ambiguous); D'Amour, 834 A.2d at 219 (same); Mendoza, 365 S.W.3d at 673 (same). Thus, I would either affirm the trial court's decision or remand for additional factfinding, and, accordingly, I dissent.