### State of Vermont v. Douglas Gray

[552 A.2d 1190]

No. 84-117

Present: **Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.**

Opinion Filed June 3, 1988

Motion for Reargument Denied July 6, 1988

*Philip H. White, Orleans County State's Attorney*, Newport, for Plaintiff-Appellee.

*Rexford & Kilmartin*, Newport, for Defendant-Appellant.

**Gibson, J.** Defendant appeals his conviction for driving while under the influence of intoxicating liquor (DUI), in violation of 23 V.S.A. § 1201(a)(2). We affirm.

I.

Viewed in light most favorable to the State, *State* v. *Jaramillo*, 140 Vt. 206, 208, 436 A.2d 757, 759 (1981), the record reveals the following relevant facts. At approximately 9:40 p.m. on March 5, 1983, defendant drove his pickup truck over the sidewalk into a temporary parking area on the other side of the street from a bar in the City of Newport, Vermont. A police officer standing in front of the bar heard a loud noise and observed defendant's vehicle traveling on the sidewalk. As defendant and a companion left the vehicle, the officer saw defendant toss what appeared to be an empty beer bottle into the back of the open truck.

When defendant and his companion headed toward the bar, the officer crossed the street and asked them to return to their vehicle. They complied, and at the officer's request, defendant produced his driver's license and the vehicle's registration. At this time, the officer observed several empty beer cans in the back of

the open truck as well as a twelve-pack of beer in the cab of the truck with one or two beers missing from the pack. The officer also noticed an odor of alcohol on defendant's breath. As defendant attempted to pass something to his companion, the keys to the vehicle dropped to the ground. The officer picked up the keys and kept them in his possession. Defendant did not request their return. During this time, defendant commented that he had just been to another bar in town for "two beers" and that he and his companion were going to the bar across the street.

Following this exchange, the officer asked defendant to perform several dexterity tests. Defendant performed the tests, but not to the satisfaction of the officer, who concluded that defendant had been operating his vehicle while under the influence of intoxicating liquor. Because the officer was on foot patrol, he radioed for assistance and told defendant that he would be taking him to the police station for DUI processing. At the station, defendant was read his *Miranda* warnings, and was administered a breath test at 11:33 p.m. The officer made additional observations that defendant's eyes were bloodshot and watery, his speech slurred, and that he was unsteady on his feet. Another officer at the station made similar observations.

Prior to trial, defendant made timely motions to dismiss the case and to suppress any evidence obtained as a result of an alleged illegal arrest and confession. The trial court refused to dismiss the case or to suppress the test results. The court made no findings, however, as to whether there had been an illegal detention, but did suppress certain answers by defendant, finding that he had been given a defective *Miranda* warning.

At trial, the State's chemist testified, over defendant's objection, that based on his evaluation of defendant's breath sample, he believed that defendant's blood alcohol content (BAC) at the time of the test had been .16 percent. The chemist further testified that a person of defendant's size would have had to consume a minimum of eight beers in order to achieve a BAC of .16 percent. The chemist also testified that where, as in the instant case, the breath test was taken nearly two hours after the operation of the vehicle, a person would have had to consume a minimum of three to four beers just prior to that operation in order to have a

BAC below .10 percent at the time of operation.[1] Defendant was found guilty of DUI, in violation of 23 V.S.A. § 1201(a)(2).

Defendant appeals, raising a number of issues: first, that the trial court erred in admitting defendant's breath test result; second, that defendant's right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures was violated by the police officer's initial investigation and subsequent processing of him for DUI; third, that the court's pretrial findings were inadequate to support the denial of defendant's motion to dismiss; and finally, that the evidence was insufficient to support a conviction.

## II.

■ Defendant asserts that the trial court erred by admitting defendant's test results without requiring that they be related back to the time of operation and without a limiting instruction as to their relevance. We have previously held that where no expert testimony has related the test result back to the time of operation of the vehicle, it is reversible error to admit the test result. *State* v. *Dumont*, 146 Vt. 252, 254-55, 499 A.2d 787, 789 (1985). In the instant case, the testimony of the State's chemist provided the necessary link relating back the test result to the last act of operation. While the chemist was unable to testify to an exact BAC at the time of operation, he provided sufficient evidence to satisfy the standards set by this Court. See *State* v. *Rollins*, 141 Vt. 105, 111, 444 A.2d 884, 887 (1982) ("There is no requirement that an expert offer his opinion in terms of absolute certainty."). Because of the high level of the test result, only one set of circumstances existed under which defendant's BAC could have been below the requisite .10 percent at the time of opera-

---

[1] This, in combination with other testimony by the arresting officer and defendant's companion, tended to disprove a "chug-a-lug" theory: that defendant had consumed a large amount of alcohol immediately prior to his detention so that his BAC would have been less than .10 percent at the time he last operated his vehicle, but over that level almost two hours later when he was administered the breath test. Defendant's companion testified that defendant had been drinking during the course of the evening. The chemist testified that a person of defendant's size would have had to consume at least three beers within fifteen minutes of defendant's last act of operation of his vehicle in order for his BAC to have been less than .10 percent at this last act of operation. Further, the arresting officer testified that defendant appeared to be under the influence of intoxicating liquor at the time of the initial confrontation.

tion: defendant's consumption of a large amount of alcohol just prior to the last act of operation. This theory was rebutted by the testimony of the chemist, the arresting officer, and defendant's companion. Any weaknesses in the expert's testimony as to the test result would go to "the weight and credibility the jury chose to accord it, not to its admissibility." *State v. Bushey*, 149 Vt. 378, 381, 543 A.2d 1327, 1329 (1988).

While the breath test was properly admitted, an instruction to the jury regarding the inferences which could be drawn from it should have been given by the trial court. See *Rollins*, 141 Vt. at 110, 444 A.2d at 887. This failure, however, does not necessitate reversal of defendant's conviction. At a chambers conference shortly before defendant rested his case, the trial court asked defense counsel whether he wished the court to give any limiting instruction regarding the significance of the breath test; counsel expressly requested that no limiting instruction of any kind be given to the jury on this matter. No further request of this nature was made to the court by counsel. We find that defense counsel's action constituted a waiver of the limiting instruction, which, therefore, cured any error arising from the failure of the trial court to provide a limiting instruction. See *State v. Parker*, 139 Vt. 179, 183, 423 A.2d 851, 853 (1980).

█ Failure to object to an error in the jury instructions may foreclose appeal on this issue absent plain error. See *State v. Hoadley*, 147 Vt. 49, 53, 512 A.2d 879, 881 (1986). We find no error in the jury instructions so egregious as to require reversal of defendant's conviction. See *id.* ("Plain error can be found only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of defendant's constitutional rights.").

### III.

█ Defendant also alleges that the police officer's initial investigation and subsequent processing of defendant for DUI violated his Fourth Amendment right under the United States Constitution to be free from unreasonable searches and seizures.[2] We hold that while defendant was stopped and later arrested by the of-

---

[2] Defendant has not argued any violation of his state constitutional rights under Chapter I, Article 11 of the Vermont Constitution; therefore, we will not discuss

ficer, defendant's Fourth Amendment rights were not violated as the officer had sufficient cause at each step to justify his actions in accordance with the Fourth Amendment. What occurred in the instant case was an escalating situation, where each inquiry by the officer led to further evidence justifying further restraints on defendant's freedom until probable cause existed to arrest defendant and process him for DUI. See, e.g., *State* v. *Watson*, 165 Conn. 577, 585, 345 A.2d 532, 537 (1973) (if results of initial stop arouse further suspicion, the stop may be prolonged and the scope enlarged as justified by the circumstances).

The police officer's initial request that defendant return to the vehicle was no more than a routine street encounter which defendant was free to ignore without adverse consequences. See *Terry* v. *Ohio*, 392 U.S. 1, 32-33 (1968) (Harlen, J., concurring) (a forcible stop calling into play the Fourth Amendment panoply of rights involves more than the police officer's ability "to address questions to other persons, for ordinarily the person addressed has an equal right to ignore his interrogator and walk away."). See also *id.* at 34 (White, J., concurring) ("nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets"). Cf. *State* v. *Kettlewell*, 149 Vt. 331, 335, 544 A.2d 591, 593 (1987) (seizure occurred when suspects were ordered from trailer by police officers with weapons drawn, and then questioned by federal agents); *State* v. *Bushey*, 148 Vt. 197, 199, 531 A.2d 902, 904 (1987) (approach of officer to vehicle did not require probable cause).

Nor did a Fourth Amendment seizure occur when the officer retained defendant's car keys. See *United States* v. *Mendenhall*, 446 U.S. 544, 554 (1980) ("We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.").[3] See also *Terry*, 392 U.S. at 19 n.16 ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."). While the officer clearly had "seized

---

them herein. See *State* v. *Martin*, 145 Vt. 562, 565-66 n.3, 496 A.2d 442, 445 n.3 (1985).

[3] The subjective intent of the police officer to detain a defendant if he or she should attempt to leave is irrelevant to this analysis. *United States* v. *Mendenhall*, 446 U.S. 544, 554 n.6 (1980).

defendant's car keys, this seizure of defendant's personalty does not necessarily equate with a "seizure" of defendant's person within the meaning of the Fourth Amendment. See *Florida* v. *Royer,* 460 U.S. 491, 501 (1983) (there is no seizure without detention). But see *id.* at 511-12 (Brennan, J., concurring) (seizure occurred when police officers *asked for* and received defendant's airline ticket and driver's license). Cf. *State* v. *Mosier,* 392 So. 2d 602, 605 (Fla. Dist. Ct. App. 1981) (police officer's removal of luggage from baggage cart to floor, in order to facilitate canine drug-sniff test, did not amount to a Fourth Amendment seizure). Throughout the period of time in which the officer was in possession of defendant's keys, defendant never requested their return to him. Also, defendant was still free to walk away from the officer. Given the totality of the circumstances in the instant case, we are not convinced that a reasonable person would have believed he was not free to depart from the scene.[4]

Defendant was seized, however, within the meaning of the Fourth Amendment when the officer requested that defendant perform field dexterity tests in order to determine if he should be processed for DUI. See *State* v. *Little,* 468 A.2d 615, 617 (Me. 1983);[5] cf. *State* v. *Jewett,* 148 Vt. 324, 330, 532 A.2d 958, 961

---

[4] We do not hold that the seizure of a defendant's personal effects can never rise to the level of seizure of a defendant for purposes of the Fourth Amendment. See *United States* v. *Place,* 462 U.S. 696, 708 (1983); *United States* v. *Puglisi,* 723 F.2d 779, 787 n.12 (11th Cir. 1984). The factors present in the instant case, however, are not among those traditionally associated with Fourth Amendment seizure analysis. See *Mendenhall,* 446 U.S. at 554.

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*State* v. *Badger,* 141 Vt. 430, 442, 450 A.2d 336, 343 (1982) ("The classic definition of a seizure is that it involves a forcible dispossession of property.").

[5] While there appears to be no disagreement among the jurisdictions that requiring a defendant to perform field dexterity tests constitutes a seizure within the meaning of the Fourth Amendment, there is a split among the states as to whether or not a field dexterity test constitutes a search within the meaning of the Fourth Amendment. Compare *State* v. *Superior Court,* 149 Ariz. 269, 273-74, 718 P.2d 171, 175-76 (1986) (field dexterity tests are searches under the Fourth Amendment) with *State* v. *Purdie,* 209 Mont. 352, 356, 680 P.2d 576, 578 (1984) (field dexterity tests not a search under the Fourth amendment because officer merely observes defendant's behavior; this does not intrude into defendant's reasonable expectations of privacy).

(1986) ("An order to get out of one's automobile is a . . . 'seizure' . . . . "). Given the totality of the circumstances, we find that at this juncture a reasonable person would have believed that he was not free to leave, therefore necessitating the application of the protections afforded defendant by virtue of the Fourth Amendment. See *Mendenhall,* 446 U.S. at 554.

In order to satisfy the Fourth Amendment guarantees against unreasonable searches and seizures, the officer must be able to point to specific articulable facts which, taken together with rational inferences from these facts, reasonably warrants the intrusion. *Terry,* 392 U.S. at 21-22. Here, the officer had heard defendant's vehicle drive over a curb and onto and along a public sidewalk, had detected an odor of alcohol on defendant's breath, had observed defendant dispose of a beer bottle in the back of his truck, and had seen empty beer cans in the back of defendant's truck. It was reasonable for the officer to stop defendant to determine if probable cause existed to arrest him for DUI. See *State* v. *Lambert,* 146 Vt. 142, 143-44, 499 A.2d 761, 762-63 (1985); see also *State* v. *Stevens,* 394 N.W.2d 388, 391 (Iowa 1986) (passenger in parked car, suspected of public intoxication, could be ordered "to perform dexterity tests to determine whether there was probable cause to arrest for intoxication."), *cert. denied,* 479 U.S. 1057 (1987).

In order to justify a seizure on grounds less than probable cause, the seizure must be reasonable. See *Delaware* v. *Prouse,* 440 U.S. 648, 654 (1979); see also *State* v. *Superior Court,* 149 Ariz. 269, 273-74, 718 P.2d 171, 175-76 (1986) (probable cause not required before requesting driver to perform field dexterity tests). But see *People* v. *Carlson,* 677 P.2d 310, 317 (Colo. 1984) (probable cause required before ordering driver to perform field dexterity tests). In order to determine the reasonableness of the seizure, a court must balance the level of intrusion of the seizure against the law enforcement interests served by the seizure. *Prouse,* 440 U.S. at 654. In the instant case, the initial stop and seizure was not unduly lengthy, nor did it include matters outside the original suspicion of DUI. See *Royer,* 460 U.S. at 500 ("an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."). We find that the minimal level of intrusion occasioned by the requirement that defendant perform the dexterity test was clearly outweighed by the strong law enforcement interest in attempting to keep a suspected drunk

driver off the roads of this state and that the seizure was reasonable. See generally *South Dakota* v. *Neville,* 459 U.S. 553, 558 (1983) ("The carnage caused by drunk drivers is well documented and needs no detailed recitation here. This Court . . . has repeatedly lamented the tragedy."); Note, *Curbing the Drunk Driver Under the Fourth Amendment: The Constitutionality of Roadblock Seizures,* 71 Geo. L.J. 1457 (1983) (deterring drunk drivers outweighs intrusion of DUI roadblocks).

After defendant failed to complete the dexterity tests satisfactorily, this evidence, combined with the other previously mentioned evidence, satisfied the probable-cause-for-arrest requirement of the Fourth Amendment. See *State* v. *Phillips,* 140 Vt. 210, 216, 436 A.2d 746, 749 (1981) (probable cause to arrest exists if the facts and circumstances known to the officer warrant a prudent person to believe that a crime has been committed). Moreover, we find that defendant was under arrest when he was transported to the police station, because there appears to be no evidence that defendant freely consented to go to the station. See *State* v. *Noble,* 148 Vt. 615, 616, 538 A.2d 162, 163 (1987).

In summation, the increasing level of defendant's detention was justified by the officer's increasing level of suspicion and cause to believe that a crime had been committed; therefore, no violation of defendant's Fourth Amendment rights occurred as a result of the officer's actions.

## IV.

Defendant also alleges certain deficiencies in the trial court's pretrial findings in ruling on defendant's motion to dismiss. While the trial court failed to find specifically whether defendant was initially detained and subsequently arrested, thus requiring application of the protections afforded by virtue of the Fourth Amendment, we find that such failure does not necessitate reversal in the instant case. As previously discussed, we find that the officer had sufficient cause to justify each level of defendant's detention, including probable cause to make the arrest. Thus, any deficiencies in the pretrial findings amounted to no more than harmless error. V.R.Cr.P. 52(a). See *State* v. *Burnham,* 145 Vt. 161, 166, 484 A.2d 918, 922 (1984) (harmless error analysis applies to pretrial hearings as well as during trial itself).

## V.

■ Finally, defendant asserts that the evidence admitted at trial was insufficient to warrant conviction, because there was insufficient evidence of defendant's intoxication. In order to prove intoxication, the State need only prove that defendant had lost full control over the faculties of mind and body due to the effect of intoxicating liquor; the measure of that loss is immaterial. See *State* v. *LeBeau*, 144 Vt. 315, 318, 476 A.2d 128, 129 (1984). In the instant case, ample evidence was admitted to establish that defendant had in fact been consuming intoxicating liquor and that his faculties had been impaired as a result thereof. There was no insufficiency of evidence to convict him.

*Affirmed.*

Defendant's motion for reargument pointed out certain factual inaccuracies in the published opinion. We are recalling the opinion to make the necessary corrections. These corrections do not affect either the result or the analysis of this opinion. Defendant's motion for reargument, therefore, is denied.