2004 VT 56

**STATE of Vermont v. Jennifer FREEMAN**

[857 A.2d 295]

No. 03-260

¶ 1. June 10, 2004. Defendant Jennifer Freeman appeals from the trial court denial of her motion to suppress evidence in a civil license suspension proceeding. Defendant claims that the trial court erred in admitting evidence obtained after the arresting officer ordered defendant to exit her vehicle because the officer lacked reasonable suspicion of wrongdoing sufficient to support the order. We affirm.

¶ 2. On November 25, 2001, at approximately 3:13 a.m., Vermont State Trooper

Trevor Carbo was driving behind defendant's vehicle when he observed the vehicle crossing the center line while in a right curve on the roadway. The car invaded the oncoming traffic to the point that the passenger side tires were on the center line. This was done while another vehicle was approaching from the opposite direction. The trooper stopped defendant and requested her license and registration. The trooper informed defendant that she had crossed the center line, which defendant explained as a momentary distraction while reaching for her cellular phone. The roadside conversation lasted a little over a minute. Trooper Carbo then asked defendant to exit the vehicle and come back to his cruiser as he intended to issue her a written warning for crossing the center line. Once in the cruiser, defendant acknowledged that she had been drinking earlier that evening. During this conversation, the trooper made certain observations which were consistent with defendant being under the influence of alcohol. The trooper then proceeded to administer field sobriety tests and a roadside preliminary breath test. Based on the results, defendant was arrested and processed for DUI. She submitted to a Data-Master breath test, which indicated a BAC of .136%. She was given a notice of intention to suspend her license and a citation to appear for arraignment.

¶ 3. In the license suspension hearing, defendant moved to suppress evidence obtained after the trooper told defendant to exit the vehicle, alleging that the evidence was illegally procured. Defendant claimed that it was apparent from the videotape that captured the stop that defendant did not exhibit any signs of intoxication during the brief conversation prior to the exit order. Thus, according to defendant, the order constituted an unlawful seizure because the trooper acted without reasonable suspicion sufficient to expand the scope of the initial detention.

¶ 4. Trooper Carbo's testimony on direct examination contradicts defendant's assertions. According to the trooper, he had been able to observe signs of defendant's intoxication prior to the exit order. The trooper testified that during the conversation with defendant he perceived a faint odor of alcohol, and noticed that defendant's speech seemed slow and slightly slurred, her eyes bloodshot and watery, and her motor skills slow. Trooper Carbo stated that defendant seemed somewhat confused. Based upon these observations, the trooper determined defendant had consumed "a considerable amount" of alcohol. The cross-examination of Trooper Carbo focused on the videotape of the stop, where it is difficult to corroborate the trooper's assertions regarding defendant's speech. On direct, the trooper was asked why had he told defendant to leave her car and sit in the cruiser while he issued a written warning. The trooper explained that, because people are not comfortable about leaving their cars, "I try and kind of set them at ease that basically I'm going to give you a written warning.... It makes things go smoother." On cross-examination, however, the trooper acknowledged that he generally liked to bring people back to his cruiser so that he could better search for signs of intoxication.

¶ 5. The hearing court denied the motion because it found that Trooper Carbo had a reasonable and articulable suspicion that defendant was intoxicated, which justified asking defendant to exit her vehicle. The court distinguished this case from *State v. Sprague*, 2003 VT 20, ¶ 22, 175 Vt. 123, 824 A.2d 539, noting that in that case defendant was required to exit the vehicle without reasonable suspicion that defendant was engaged in wrongdoing or posed any objective danger to the safety of the officer or others.

After reviewing the tape, the court conceded that it was difficult to corroborate the trooper's observations because "obviously the Court doesn't see [defendant's] eyes nor can the Court see [defendant's] motor movements within the car." Although the court agreed with defendant that defendant's speech on the tape does not appear extremely slurred, it noted that this fact is consistent with the trooper's DUI processing form affidavit, where he checked the box for "slurred speech" and wrote in "very slight." The court stated that it would not "substitute its judgment in a hypertechnical way as we are able to do with the technology in the tape and assess Trooper Carbo's testimony in increments of one or two seconds."

¶ 6. On appeal, defendant reiterates her argument that pursuant to *Sprague*, the trooper did not have a reasonable suspicion of wrongdoing. Defendant points out that Trooper Carbo admitted to routinely asking motorists to get into his cruiser to put himself in a better investigatory posture than a driver's side conversation would allow, thus suggesting that all evidence of defendant's intoxication was obtained in this manner. Defendant claims that the videotape contradicts the trooper's testimony that defendant's speech was slurred or confused, and further contends that because the trooper conceded that he did not fill in the DWI affidavit until he got back to the barracks, it is impossible to determine whether the trooper's detection of intoxication signs occurred before or after the exit order.

¶ 7. This Court has recently adopted a two-step approach for reviewing motions to suppress. See *State v. Lawrence*, 2003 VT 68, ¶¶ 8-9, 175 Vt. 600, 834 A.2d 10 (mem.). As we explained in *Lawrence*, the review of a motion to suppress involves a mixed question of law and fact, that is, "whether the factual findings supported by the record lead to the conclusion, that, as a matter of law, suppression of evidence was or was not necessary." *Id.* ¶ 9. Recognizing that the trial court is in a better position to determine the weight and sufficiency of the evidence presented, this Court applies a clearly erroneous standard to the trial court's finding of historical facts. *Id.* If the trial court's findings are not clearly erroneous, we will then review the legal issues, such as the reasonableness of a seizure, de novo. *Id.* at ¶ 8.

¶ 8. In its finding of facts, the trial court gave great weight to Trooper Carbo's testimony. The court noted that the trooper had been with the Vermont State Police for over two years, and that prior to that had been a police officer with the Montpelier Police Department for eight-and-a-half years. The court also pointed out that Trooper Carbo has processed "over a couple of hundred DUI cases." In essence, the court refused to substitute its judgment of the events captured in the tape for the trooper's testimony, which the court found credible. Given the inherent difficulty in evaluating demeanor, mannerisms, and tone of voice, in addition to the quality of testimony itself, we defer to the factfinder's determination of the credibility of the witness, and the persuasive effect of his testimony. See *State v. Hagen*, 151 Vt. 64, 65, 557 A.2d 493, 494 (1989). Relying on that testimony, the court found that prior to the exit order the trooper observed defendant's vehicle cross the center line in the face of oncoming traffic, smelled an odor of intoxicants coming from the car, observed that defendant's speech was slightly slurred, and noted that her eyes were watery and bloodshot and did not appear to focus. Those findings are supported by the record and are not clearly erroneous.

¶ 9. Whether the trial court erred in holding that the exit order was reasonable under the circumstances is the legal

question that we review de novo. An order to exit one's vehicle after the initial investigatory stop is a further seizure within the meaning of Chapter I, Article Eleven of the Vermont Constitution. *State v. Jewett*, 148 Vt. 324, 330, 532 A.2d 958, 961 (1987). In *Sprague*, we explained that "[t]he facts sufficient to justify an exit order need be no more than an objective circumstance that would cause a reasonable officer to believe it was necessary to protect the officer's, or another's, safety or to investigate a suspected crime." *Sprague*, 2003 VT 20, ¶ 20. In *Sprague*, we held that the record evidence in that case provided no objective basis for ordering defendant to leave his vehicle because the officer could not articulate any safety concerns or any suspicion of a criminal offense that required further investigation. *Id.* ¶ 22. Here, however, Trooper Carbo adduced objective facts that justified his suspicion that defendant was driving under the influence; it was thus reasonable to require her to leave her vehicle to conduct further investigation. The trial court's denial of defendant's motion to suppress was not error.

*Affirmed.*