2010 VT 111

**STATE of Vermont v. Brandon SANTAW**

[12 A.3d 548]

Nos. 09-396 & 09-471

¶ 1. December 13, 2010. The State appeals from a trial court order granting defendant's motion to suppress and resulting judgment for defendant in a civil suspension action. The issue is whether a state trooper had reasonable and articulable suspicion to detain defendant and request field sobriety tests when the apparent target of his initial investigation was the driver of a second car stopped at the same time. We reverse and remand.

¶ 2. The trial court found the following facts. On July 18, 2009, defendant was driving west on Calais Road, followed by a second car. Traveling in the opposite direction, a state trooper observed the vehicles and noticed the second car drift within its lane of travel. The trooper turned and followed, continuing to see the second vehicle drift, and eventually travel to the right and off the paved portion of the highway for some distance. Deciding to stop the second car, the trooper then saw the lead car cross the yellow centerline for some undetermined time and distance while going around a curve. Just after this, the trooper activated his blue lights and both cars turned into the same driveway, which happened to be at defendant's residence.

¶ 3. Defendant, who was operating the first car, walked to the driver's side door of the second car and was there when the trooper reached them. The trooper detected an odor of alcohol but could not determine if it was coming from defendant, the other driver, or both. He instructed defendant to return to his car and retrieve his license and registration. After a brief interview with the driver of the second car, the trooper approached defendant. The trooper detected the smell of alcohol emanating from his person, observed that his eyes were bloodshot and watery, and learned, through questioning him, that defendant had been drinking. Based upon defendant's performance on dexterity exercises, as well as the result of a preliminary breath test (PBT), he was taken into custody where an evidentiary breath test reported a blood alcohol concentration of 0.140%. Defendant was charged with driving under the influence of intoxicating liquor (DUI) in violation of 23 V.S.A. § 1201(a)(2),

and driving with an alcohol concentration of 0.08% or more in violation of 23 V.S.A. § 1201(a)(1).

¶ 4. Defendant moved to suppress all evidence obtained subsequent to the trooper's instruction that he return to his car. The court concluded, and defendant concurred, that the initial stop of the second car was lawful. Defendant maintained, however, that in the context of having just blocked defendant's driveway with blue lights flashing to stop the second vehicle, the trooper's direction that defendant return to his car and retrieve his license and registration constituted a detention. Moreover, asserted defendant, this detention was effected without the trooper having reasonable or articulable suspicion that defendant, rather than the driver of the second car, had engaged in any wrongdoing. See *State v. Kettlewell,* 149 Vt. 331, 334, 544 A.2d 591, 593 (1987) (recognizing validity of brief investigative detention if the officer, "based on objective facts and circumstances, reasonably believes that the suspect is, or is about to be, engaged in criminal activity"). The State responded, based on the testimony of the trooper, that the officer reasonably separated the two drivers for safety reasons and to determine the source of the intoxicant odor. The court observed that it was only after defendant was sent back to his car to find his documents that the trooper noted the odor of intoxicants from defendant's person and his bloodshot and watery eyes.

¶ 5. The court held that the proper point of inquiry was the point at which the trooper directed defendant to return to the first car to fetch his documents. It was then, in the court's view, that a reasonable person in defendant's circumstances would not feel free to leave. Accordingly, concluded the court, when the officer separated the two drivers, defendant was detained for investigation. Relying, however, on the trooper's concession that a single crossing of the centerline was not

unusual, the court opined that at the time of detention the officer had no more than a hunch to support the suspicion of criminal activity on defendant's part. Since a mere hunch is insufficient to justify police detention, the court ruled that the evidence of intoxication obtained after the invalid detention must be suppressed, citing *State v. Emilo,* 144 Vt. 477, 481, 479 A.2d 169, 171 (1984) (stopping a motorist "without at least articulable and reasonable suspicion [of wrongdoing] . . . is an impermissible violation of the motorist's Fourth Amendment rights" (quotation omitted)). We disagree with the trial court's conclusion that the detention was unjustified, and reverse.

¶ 6. We review a trial court's disposition of a motion to suppress in two steps. *State v. Mara,* 2009 VT 96A, ¶ 6, 186 Vt. 389, 987 A.2d 939. We first review the trial court's factual findings for clear error, recognizing that the trier-of-fact is in the best position to determine the weight and sufficiency of the evidence presented. *State v. Freeman,* 2004 VT 56, ¶ 7, 177 Vt. 478, 857 A.2d 295 (mem.). "If the trial court's findings are not clearly erroneous, we will then review the legal issues, such as the reasonableness of a seizure, de novo." *Id.*

¶ 7. The essential facts of this case are not disputed. The parties agree that the trooper made a lawful stop of the second car in defendant's driveway. Defendant conceded there was nothing unlawful about the trooper approaching him while he stood beside the second car. The trial court found the trooper then sent defendant to his own car, at which time "defendant did not have a choice[] (the officer admitted as much)." The findings are supported by the record below and not clearly erroneous.

¶ 8. We next review the trial court's legal conclusions. It is a question of law whether the facts, as found by the trial court, justify a particular police action, such as detention. *Mara,* 2009 VT 96A, ¶ 6. The totality of the circumstances does

not, in our view, support the court's characterization of defendant's detention as being based on a mere hunch of the officer. At the time of the trooper's instruction to defendant to return to his car, the trooper knew defendant had crossed the centerline with the second car, acting more erratically, following behind. From the odor of alcohol, indistinguishable between the two drivers, the trooper knew that one or both had been drinking. It was not unreasonable for the trooper to have defendant get his license and registration, nor was it unreasonable to separate the two drivers to discern if only one or both of the drivers smelled of alcohol. The trooper had not a hunch but a reasonable and articulable suspicion that each driver committed traffic violations. The odor of intoxicants could only add to that suspicion.

¶ 9. The progression of events in this case is analogous to the situation in *State v. Gray*, 150 Vt. 184, 552 A.2d 1190 (1988). In that case, the defendant arrived at a neighborhood bar, driving his truck over a sidewalk to park in a temporary lot. An officer who observed this approached the defendant, requested his license and registration, and followed the defendant back to the truck as he retrieved it. As he neared the truck to view the defendant's documentation, the officer gathered information indicating the defendant might be intoxicated, including an odor of alcohol, admissions by the defendant that he had been drinking, and empty beer containers in the truck bed and cab. The officer proceeded to administer field sobriety tests, leading to the defendant's arrest. The defendant alleged that the officer's actions constituted an unlawful search and seizure, but we held that the officer "had sufficient cause at each step to justify his actions." *Id.* at 189, 552 A.2d at 1193. In *Gray*, the detention and investigation presented "an escalating situation, where each inquiry by the officer led to further evidence justifying further restraints on defendant's freedom until

probable cause existed to arrest defendant and process him for DUI." *Id.*

¶ 10. Although the initial police contact in *Gray* was treated as a "routine . . . encounter" short of detention, *id.* (request to return to vehicle to produce identification was no more than a "routine . . . encounter" from which suspect was free to walk away), here the court determined that, under the circumstances, the trooper's instruction was sufficiently commanding to constitute a stop. This distinction makes no difference since, shortly before the stop, the officer witnessed defendant commit a traffic violation. While not bound to do so, the trooper could detain defendant for the purpose of confirming his license and registration. Our analysis therefore concerns whether the circumstances at that time, and afterwards, provided enough of a cascade of evidence to justify the trooper's escalating intrusion on defendant's liberty and expanding investigation.

¶ 11. Detention or seizure by a law enforcement officer is justified if a police officer has a reasonable and articulable suspicion of illegal activity. *State v. Pratt*, 2007 VT 68, ¶ 5, 182 Vt. 165, 932 A.2d 1039. Here, by the time the field sobriety tests were administered, the trooper had reason to believe defendant was or had been operating a vehicle while under the influence — sufficient grounds to administer the PBT. 23 V.S.A. §§ 1202(a), 1203(f). In *Mara* we held, absent evidence of erratic driving, that the totality of the circumstances plus accumulating evidence provided a sufficient basis for administration of a PBT. *Mara*, 2009 VT 96A, ¶ 12. There, the officer first detected the odor of alcohol, then observed watery eyes, and further questioning produced an admission of drinking. Based on these factors, the officer pursued field sobriety tests then proceeded to administer a PBT. The defendant successfully argued below that, because he passed the field tests, the officer's suspicion of intoxica-

tion dissipated between his initial observations and administration of the PBT. We reversed the trial court and held that the odor of alcohol, admission to drinking, and watery bloodshot eyes provided a sufficient basis to proceed with a breath test, regardless of the field test results. *Id.*

¶ 12. Our ruling in *Mara* confirmed our holding in *State v. Orvis*, allowing use of a PBT without requiring the officer to first find external signs of impairment through field dexterity tests. 143 Vt. 388, 391, 465 A.2d 1361, 1363 (1983). *Orvis* decided that a reasonable belief that a defendant was driving while intoxicated existed where the officer observed no erratic driving, but when responding to an accident, did detect the faint odor of alcohol from a driver who also admitted to drinking a six-pack earlier in the day. *Id.* at 390, 465 A.2d at 1362. Similarly to *Orvis*, the trooper here did not initially stop defendant for erratic driving, but arrived on the scene to investigate the second driver. See *id.* at 389, 465 A.2d at 1362-63.

¶ 13. In contrast to *Orvis*, however, the trooper in this case did observe defendant briefly violate the rules of the road when he crossed the centerline. In the course of lawfully interacting with both drivers, the trooper incidentally discovered indicia that defendant may have been operating under the influence given that the odor of intoxicants could not be distinguished between defendant and the second driver. Already justified in detaining defendant for failure to stay right, had the trooper deemed to do so, it was not unreasonable to have defendant move aside in an effort to resolve the mystery of the alcohol smell. Returning to defendant after separating him from the second driver, the trooper confirmed defendant as a source of the smell, as well as noting his bloodshot and watery eyes. This circumstance was sufficient to justify further inquiry under *Mara*. Defendant's admission to drinking was enough to justify a PBT under *Mara* and *Orvis*.

¶ 14. The trooper's articulated explanation for detaining defendant, after being unable to distinguish the smell of intoxicants between one or both of the two drivers, was fact-based, reasonable, and no mere hunch. The trooper saw defendant cross the centerline. That the officer did not initially intend to stop defendant for that violation vested no waiver or grant of immunity for defendant's benefit. The State argued below and reiterates on appeal that the traffic violation justified the stop. The trial court was not persuaded, focusing instead on the initial lack of evidence to support a suspicion of "criminal activity" — presumably something more significant than the single civil traffic violation witnessed by the trooper.

¶ 15. In this regard, the court erred. Failure to keep to the right in violation of the law does not require the offending conduct be profound or prolonged. See 23 V.S.A. § 1031(a) (mandating that vehicles "shall be driven upon the right half of the roadway," subject to specific exceptions not pertinent here). Based on the violation alone, the officer was authorized to stop defendant and have him produce his license and registration. More facts became evident to support further inquiry: the smell of alcohol from defendant's person, the observation of bloodshot watery eyes, and defendant's admission to drinking. From the general odor of intoxicants noticed after an observed traffic violation, to the specific smell of alcohol from defendant, defendant's admission, and the PBT, the officer proceeded not on hunches, but on escalating reasonable and articulable suspicion of wrongdoing. Cf. *Emilo*, 144 Vt. at 481, 479 A.2d at 171 (holding that a stop was not justified by an officer's "hunch" based on seeing a car strange to the community being driven during the early hours of the night). The trooper's actions were lawful; the evidence so obtained was properly admissible and should not have been suppressed.

*Reversed and remanded.*

¶ 16. **Dooley, J.,** concurring. I concur to make clear what is not decided in this case. The trial judge apparently determined that defendant was seized when the officer directed him to produce his license and registration. As I noted in *State v. Sutphin*, courts from other jurisdictions "have held that requesting a license and registration does not constitute a seizure unless the officer does not return these documents." 159 Vt. 9, 13, 614 A.2d 792, 794 (1992) (Dooley, J., concurring) (citing 3 W. LaFave, Search & Seizure § 9.2(h), at 414 n.252 (2d ed. 1987)). An operator must "produce his or her operator's license and the registration certificate for the motor vehicle" to an officer who has reasonable suspicion that the operator has committed a violation of Title 23. 23 V.S.A. § 1012(b). The distinction between this case and others we have considered is that here defendant was out of his car and had to go a short distance to the car to produce his license and registration. It is arguable whether this is a distinction with a real difference. Whether in the car or not, defendant is not free to leave while he retrieves the documents, gives them to the officer, and waits for their return.

¶ 17. Because we are deciding that the officer had reasonable suspicion for a seizure based on defendant's violation of 23 V.S.A. § 1031 and the odor of alcohol, we do not need to, and do not, reach when a seizure occurred.

¶ 18. I am authorized to state that Justice Skoglund joins this concurrence.