**Certiorari Denied, February 13, 2012, No. 33,400**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-030**

**Filing Date:  December 27, 2011**

**Docket No. 30,331**

**STATE OF NEW MEXICO,**

> **Plaintiff-Appellee,**

**v.**

**CANDACE S.,**

> **Child-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**William C. Birdsall, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**FRY, Judge.**

**{1}**     Candace S., a minor at the relevant time, appeals the district court's denial of her motion to suppress the results of her field sobriety tests (FSTs) and breath alcohol tests.  She argues that FSTs are searches that must be supported by a warrant, an exception to the warrant requirement, or voluntary consent.  She further argues that the Children's Code

required the officer investigating her traffic violation to advise her of her right to remain silent and her right to withhold consent to the FSTs and the breath tests. Because the officer did not so advise her, Candace maintains that her consent to the FSTs and breath tests was involuntary.

**{2}** We conclude that FSTs must be supported by reasonable suspicion, that there is no requirement for an officer to advise a minor of a right to withhold consent, and that failure to advise a minor of a right to remain silent does not render FSTs inadmissible. We therefore affirm the district court's denial of Candace's suppression motion.

**BACKGROUND**

**{3}** While on patrol in September 2009, Officer Brian Kinley observed a vehicle swerving across the white line on the roadway and traveling at least ten miles under the posted speed limit. He stopped the vehicle and made contact with Candace, who was driving the car. He asked Candace for her driver's license, and Candace said that she had left it at home. He told the occupants that he smelled alcohol in the car, and a passenger said that she had been drinking. Officer Kinley asked Candace to step out of the car and noticed that Candace smelled of alcohol and that she was weaving as she walked away from the car. Officer Kinley asked Candace if she had been drinking, and she said that she had not. He asked her again after he administered an FST, and she said that she had had "one can."

**{4}** Officer Kinley administered additional FSTs, during which Candace swayed, stumbled, and failed to follow directions. Officer Kinley asked Candace if she wanted to take a portable breath test and, without waiting for an answer, instructed her how to provide a breath sample. The portable breath test yielded a result of .153. Officer Kinley estimated that the time from contacting Candace in her car to her arrest was about five minutes. He then transported Candace to the New Mexico State Police office, where he obtained two breath samples from the Intoxilyzer testing machine, which registered .14 and .16. Officer Kinley did not advise Candace of her right to remain silent prior to this time.

**{5}** The State filed a delinquency petition against Candace alleging that she drove while under the influence of intoxicating liquor (DWI), failed to maintain her traffic lane, and drove without a valid license. Candace's attorney filed a motion to suppress all statements made by Candace and the results of the FSTs and the breath tests. As grounds for the motion, Candace asserted that the New Mexico Constitution and NMSA 1978, Section 32A-2-14 (2009), of the Children's Code provide broad protections to children during police questioning and that, as a result, Candace's unwarned statements to Officer Kinley should be suppressed. In addition, Candace argued that the greater protections provided by Article II, Section 10 of the New Mexico Constitution and by *State v. Javier M.*, 2001-NMSC-030, 131 N.M. 1, 33 P.3d 1, compelled the suppression of the FSTs and breath tests because Candace's consent to the tests was not voluntary.

2

**{6}** In its response to the suppression motion, the State agreed that "any statements of [Candace] made in response to Officer Kinley's questioning should be suppressed." However, the State opposed suppression of the FST and breath test results. Following an evidentiary hearing, the district court suppressed all statements made by Candace, whether in response to Officer Kinley's questions or volunteered, but it further determined that the FST and Intoxilyzer breath test results were admissible. Candace entered a conditional plea admitting to the allegations in the delinquency petition while reserving her right to appeal the denial of her suppression motion. This appeal followed.

## DISCUSSION

**{7}** Candace makes one overarching argument with several sub-parts. Her general argument is that the district court should have suppressed the FST and breath test results because Officer Kinley's failure to advise her of her right to remain silent and of her right to refuse the testing rendered her consent to the tests involuntary and invalid. In support of this argument, Candace further argues that: (1) FSTs violate the right against self-incrimination under Article II, Section 15 of the New Mexico Constitution; (2) FSTs constitute a search and, under Section 32A-2-14 and the holding of *Javier M.*, Candace should have been advised of her right to refuse consent before being asked to perform FSTs; and (3) Candace's consent to the breath tests was involuntary.

### Standard of Review

**{8}** The same standard of review applies to all of Candace's arguments. "In reviewing an order of suppression, we defer to the district court's findings of fact that are supported by substantial evidence, and we review the district court's application of the law to the facts de novo." *State v. Randy J.*, 2011-NMCA-105, ¶ 10, 150 N.M. 683, 265 P.3d 734, *cert. denied*, 2011- NMCERT- 009, 269 P.3d 903. In the present case, the facts are undisputed, so we review the district court's order to determine whether it was correct as a matter of law. *See id.* In addition, we review the district court's interpretation of Section 32A-2-14 de novo. *Id.*

### Article II, Section 15 of the New Mexico Constitution and the Right Against Self-Incrimination

**{9}** Candace argues that the FSTs violated her right against self-incrimination, which is guaranteed by Article II, Section 15 of the New Mexico Constitution, and that Article II, Section 15 provides broader protections than the Fifth Amendment to the United States Constitution. We agree with the State that Candace failed to preserve this argument.

**{10}** Our Supreme Court recently clarified what is required in order to preserve an argument that the state constitution provides greater protection than the federal constitution in *State v. Leyva*, 2011-NMSC-009, ¶ 49, 149 N.M. 435, 250 P.3d 861. The Court stated:

3

> Where a state constitutional *provision* has previously been interpreted more expansively than its federal counterpart, trial counsel must develop the necessary factual base and raise the applicable constitutional *provision* in trial court. Where the provision has never before been addressed under our interstitial analysis, trial counsel additionally must argue that the state constitutional provision should provide greater protection, and suggest reasons as to why, for example, a flawed federal analysis, structural differences between state and federal government, or distinctive state characteristics.

*Id.* (internal quotation marks and citation omitted). In the present case, Candace acknowledges that Article II, Section 15 has never been addressed under our interstitial analysis because, as she notes, it "has been interpreted in lock step with the Fifth Amendment." Yet she failed in the district court to suggest reasons why the provision should be interpreted as providing greater protection than the federal constitution. Indeed, in the district court, the only mention of Article II, Section 15 was Candace's statement in her written suppression motion that she "relie[d] upon the New Mexico Constitution, Article 2 [sic], Sections 14, 15, and 18 . . . to support the proposition that children in New Mexico are provided broader and greater protections during police questioning than are provided to children . . . under the United States Constitution." She did not elaborate on this conclusory statement in either her written motion or her argument at the hearing on her motion.

**{11}** Even if Candace had properly preserved her argument, our decision in *Randy J.* disposes of her contentions. In that case, we concluded that a child's performance during FSTs is not a testimonial communication subject to suppression under the Fifth Amendment's privilege against self-incrimination or in accordance with the protections provided by Section 32A-2-14(D) of the Children's Code. *Randy J.*, 2011-NMCA-105, ¶¶ 14, 17-18. Because our courts have never interpreted Article II, Section 15 differently from Fifth Amendment case law, the same holding would apply in the present case.

**Prerequisite to Performance of FSTs**

**{12}** Candace argues that FSTs are searches implicating constitutional protections and that they cannot be undertaken without establishing an exception to the warrant requirement or voluntary consent. Apparently assuming that there were no warrant exceptions established, Candace then contends that, consistent with Section 32A-2-14 and *Javier M.*, a child must be told that consent to FSTs may be withheld. She further maintains that because Officer Kinley did not tell her this, any consent she may have given was involuntary.

**{13}** We begin by considering Candace's argument that FSTs constitute a search with constitutional ramifications. Candace summarizes cases from other jurisdictions holding that FSTs constitute searches and notes that some of these jurisdictions require a showing of probable cause while some require only reasonable suspicion to justify FSTs. *See, e.g.*, *People v. Carlson*, 677 P.2d 310, 316-18 (Colo. 1984) (en banc) (holding that FSTs

4

constitute searches that must be supported by probable cause); *Blasi v. State*, 893 A.2d 1152, 1164, 1168 (Md. Ct. Spec. App. 2006) (holding that FSTs constitute a search subject to a showing of reasonable suspicion). Other cases hold that FSTs constitute an expansion of an investigatory detention, rather than a search, and that they require the articulation of reasonable suspicion to justify the expansion. *See, e.g.*, *State v. Little*, 468 A.2d 615, 617-18 (Me. 1983) (determining that FSTs are part of an investigatory stop that must be based on reasonable suspicion); *State v. Gray*, 552 A.2d 1190, 1194-95 (Vt. 1988) (same).

**{14}** We need not decide whether FSTs constitute a search or an expansion of an investigatory detention. Regardless of how they are labeled, FSTs implicate constitutional protections under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. Candace focuses on Article II, Section 10 and, as a result, we limit our analysis to that constitutional provision.

**{15}** Our Supreme Court's decision in *Leyva* provides the framework for our discussion. Although that case involved an officer's expansion of an investigatory detention with questioning unrelated to the initial traffic stop, the analysis is applicable to any search or seizure conducted in connection with any investigatory detention. 2011-NMSC-009, ¶¶ 4-5, 10. In *Leyva*, the Court reassessed its decision in *State v. Duran*, 2005-NMSC-034, 138 N.M. 414, 120 P.3d 836, and concluded that *Duran* no longer represented proper Fourth Amendment analysis in light of recent United States Supreme Court precedent. However, the Court further determined that the *Duran* analysis continues to be proper when a court assesses searches and seizures under Article II, Section 10. *Leyva*, 2011-NMSC-009, ¶¶ 2-3.

**{16}** *Duran* considered when an officer's questions about travel plans during a traffic stop are reasonable under the Fourth Amendment. *Leyva*, 2011-NMSC-009, ¶ 11. The *Duran* Court applied the two-part test first set out in *Terry v. Ohio*, 392 U.S. 1 (1968), for determining the propriety of a detention expansion. *Leyva*, 2011-NMSC-009, ¶ 11. The *Terry* test considers "[(1)] whether the officer's action was justified at its inception, and [(2)] whether it was reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. at 20.

**{17}** The Court in *Leyva* determined that the *Terry*-type test had been replaced in Fourth Amendment jurisprudence with a bright-line test holding that if the initial stop was lawful, officers may ask questions unrelated to the initial reason for the stop "so long as they do not measurably extend the length of the stop." *Leyva*, 2011-NMSC-009, ¶ 15 (internal quotation marks and citation omitted). However, in considering the propriety of a similar expansion of a traffic stop under the New Mexico Constitution, *Leyva* held that the two-part *Terry* test should still be utilized. *Leyva*, 2011-NMSC-009, ¶ 55 (stating that "*Duran*'s two-part analysis, adhering to the scope and duration requirements set forth in *Terry*, best protects the right against unreasonable searches and seizures under Article II, Section 10 of the New Mexico Constitution"). The Court concluded that "[t]he overall reasonableness of the stop continues to be determined [under the New Mexico Constitution] by balancing the public interest in the enforcement of traffic laws against an individual's right to liberty, privacy, and

5

freedom from arbitrary police interference." *Leyva*, 2011-NMSC-009, ¶ 55 (internal quotation marks and citation omitted).

**{18}** Applying this analysis to FSTs, we hold that an officer may administer FSTs if the officer has developed independent reasonable suspicion that would support the extension of the traffic stop to conduct the FSTs. There is a "compelling public interest in eradicating DWI occurrences and the potentially deadly consequences" of that crime. *City of Santa Fe v. Martinez*, 2010-NMSC-033, ¶ 13, 148 N.M. 708, 242 P.3d 275. In accordance with *Leyva*, we must weigh this compelling interest against the intrusion of FSTs that assess the physical performance of a suspected drunk driver. In our estimation, such an intrusion is warranted if the investigating officer has reasonable, articulable facts upon which to base a suspicion that the driver in question may be impaired. *See State v. Williamson*, 2000-NMCA-068, ¶¶ 8, 9, 129 N.M. 387, 9 P.3d 70 (explaining that an officer may expand an investigatory detention related to a traffic stop if the officer "has a reasonable and articulable suspicion that the driver is impaired" and that the administration of FSTs may reasonably be a part of this investigation); *see also Randy J.*, 2011-NMCA-105, ¶¶ 33-34 (holding that, under Article II, Section 10, the officer had reasonable suspicion to expand a traffic stop into an investigation of the possibility that the minor driver had been driving while impaired).

**{19}** We find support for our determination in cases from other jurisdictions that have reached a similar conclusion. For example, in *State v. Superior Court*, 718 P.2d 171, 176 (Ariz. 1986) (in banc), the Arizona Supreme Court weighed the intrusion of FSTs against the public's interest in removing drunk drivers from the state's highways. Consistent with *Terry*, which involved an officer conducting a pat-down search based on reasonable suspicion that the suspect might be armed, *see* 392 U.S. at 6-7, the Arizona court concluded that "the threat to public safety posed by a person driving under the influence of alcohol is as great as the threat posed by a person illegally concealing a gun." *Superior Court*, 718 P.2d at 176. Similarly, the Vermont Supreme Court balanced the intrusion of FSTs against law enforcement interests and determined that the "minimal level of intrusion" of FSTs is "clearly outweighed by the strong law enforcement interest in attempting to keep a suspected drunk driver off the roads." *Gray*, 552 A.2d at 1195; *see Little*, 468 A.2d at 617-18 (holding that FSTs may be conducted if they are supported by reasonable suspicion); *State v. Royer*, 753 N.W.2d 333, 340 (Neb. 2008) (same); *People v. Walter*, 872 N.E.2d 104, 114 (Ill. App. Ct. 2007) (same).

**{20}** Given our disposition of this issue, we reject one premise underlying Candace's argument—that administration of FSTs must be supported by a warrant, an exception to the warrant requirement, or valid consent. Instead, an officer may administer FSTs if the officer has reasonable suspicion that a driver was driving impaired. We turn now to Candace's argument that she was entitled to additional protections due to her status as a minor.

**Application of Section 32A-2-14 to FSTs**

**{21}** Candace relies on Section 32A-2-14 to argue that Officer Kinley was required to advise her of her right to remain silent and of her right to refuse consent to the FSTs. Because Officer Kinley did not give Candace these warnings, she maintains that the district court should have excluded the FST results from evidence.

**{22}** We begin our analysis with a review of the applicable provisions of Section 32A-2-14. In relevant part, that statute provides:

> A. A child subject to the provisions of the Delinquency Act is entitled to the same basic rights as an adult, except as otherwise provided in the Children's Code, including rights provided by the Delinquency Act, except as otherwise provided in the Children's Code [NMSA 1978, §§ 32A-1-1 to -21 (1993, as amended through 2009)].
>
> . . . .
>
> C. No person subject to the provisions of the Delinquency Act who is alleged or suspected of being a delinquent child shall be interrogated or questioned without first advising the child of the child's constitutional rights and securing a knowing, intelligent and voluntary waiver.
>
> D. Before any statement or confession may be introduced at a trial or hearing when a child is alleged to be a delinquent child, the state shall prove that the statement of confession offered in evidence was elicited only after a knowing, intelligent and voluntary waiver of the child's constitutional rights was obtained.

These provisions require that any child subject to an investigatory detention be advised of his or her "right to remain silent and that anything they say can be used against [the child]." *Javier M.*, 2001-NMSC-030, ¶ 41. In addition, under Section 32A-2-14(D), if a child is not so advised, "any statement or confession obtained as a result of the detention or seizure is inadmissible in any delinquency proceeding." *Javier M.*, 2001-NMSC-030, ¶ 1. The State does not dispute that Candace was subject to an investigatory detention when Officer Kinley stopped her car and that he failed to advise her of the rights specified in *Javier M.*

**{23}** Candace contends that, consistent with Section 32A-2-14 and *Javier M.*, any child subject to an investigatory detention must also be advised that he or she has the right to deny consent to the performance of FSTs. She argues that a request to perform FSTs is a question like any other and, as a result, if a child is not advised of his or her right to decline the request and/or if the state fails to prove that the child's consent was voluntary, the results of the FSTs are inadmissible.

**{24}** Candace's argument boils down to the contention that the holding in *Javier M.* should be expanded. She maintains that, in addition to advising a child of the right to remain

silent and of the fact that anything said can be used against the child, an officer detaining a child must also advise the child of the right to withhold consent to FSTs.

**{25}** Our Supreme Court's decision in *Javier M.* does not support Candace's contention. In that case, the Court interpreted Section 32A-2-14(C) as requiring that "children who are subject to investigatory detentions are statutorily entitled *only* to be warned of their right to remain silent and that anything they say can be used against them." *Javier M.*, 2001-NMSC-030, ¶ 41 (emphasis added). Thus, we do not read *Javier M.* as requiring any additional warnings to a child, such as a warning that the child need not consent to FSTs.

**{26}** In addition, the Court in *Javier M.* made it clear that Section 32A-2-14 "only protects against a child's *statements* which are made during an investigatory detention in response to a police officer's questioning." *Javier M.*, 2001-NMSC-030, ¶ 40 (emphasis added). It is also clear that a child's "lack of muscular coordination during the [FSTs] is not a statement subject to suppression under Section 32A-2-14(D)." *Randy J.*, 2011-NMCA-105, ¶ 18. Because Section 32A-2-14 was narrowly drawn to protect a child's statements and because a child's physical conduct in an FST is not a statement, it follows that Section 32A-2-14 does not require a police officer to advise a child that he or she may decline to perform FSTs. Indeed, it may well be a disservice to a child to advise him or her in this way because a refusal to perform FSTs may be admissible in evidence. *See State v. Wright*, 116 N.M. 832, 835-36, 867 P.2d 1214, 1217-18 (Ct. App. 1993) (holding that admission of evidence that the defendant refused to take an FST did not violate the right to be free of self-incrimination).

**{27}** Furthermore, the Court in *Javier M.* interpreted Section 32A-2-14 as a very narrowly drawn statutory protection. The Court noted that Subsection (C) of the statute "is an exception to Subsection (A)'s general recognition that children are entitled to the same basic rights as adults." *Javier M.*, 2001-NMSC-030, ¶ 32 (internal quotation marks and citation omitted). Thus, with the exception of this very limited statutory requirement to advise a child of the right to remain silent and of the consequences of waiving that right, a child's constitutional rights are the same as an adult's rights. *See id.* ¶ 42 (noting that "in enacting Section 32A-2-14(C), the Legislature is providing juveniles with a separate statutory right, not codifying a constitutional mandate"). Candace has not directed us to any authority holding that an adult must be advised that he or she need not consent to FSTs, and we conclude that there is no constitutional mandate requiring an officer to so inform either an adult or a child. *Cf. McKay v. Davis*, 99 N.M. 29, 31, 653 P.2d 860, 862 (1982) (explaining that "there is no constitutional right to refuse to take a chemical test" for the presence of alcohol). We therefore reject Candace's argument that the holding in *Javier M.* should be expanded to require a child to be advised that consent to FSTs may be withheld.

**Application of Holding to the Facts**

**{28}** Having disposed of Candace's arguments with respect to the FSTs, we apply our determinations to the facts of this case. Officer Kinley had reasonable suspicion to administer FSTs to Candace because he observed her erratic driving, smelled the odor of alcohol on her person, and saw her sway as she walked to the back of her car. *See State v. Walters*, 1997-NMCA-013, ¶ 26, 123 N.M. 88, 934 P.2d 282 (stating that an officer had reasonable suspicion to investigate further when he detected the odor of alcohol). Officer Kinley had no obligation to advise Candace of a right to refuse FSTs in order to administer the FSTs. And, while Section 32A-2-14 required Officer Kinley to advise Candace of her right to remain silent and of the consequences of her waiver of that right, his failure to explain this to her did not render the FSTs inadmissible because her performance of the FSTs did not constitute statements subject to suppression. Therefore, we affirm the district court's denial of Candace's motion to suppress the results of the FSTs.

**Admissibility of Breath Test Results**

**{29}** Candace's final argument is that Officer Kinley had to advise her of her right to refuse the portable breath test. In support of this contention, she relies on the same authorities and logic she relied on in arguing that Officer Kinley was required to advise her of her right to withhold consent to the FSTs. For the same reasons that we rejected her argument with respect to the FSTs, we also reject her argument regarding the portable breath test.

**{30}** The district court stated that the results of the portable breath test would not be admissible. However, Candace argues that the Intoxilyzer breath tests taken at the police station after her arrest were "tainted by the earlier breath test which was a product of involuntary consent." We are not persuaded by this argument. Before Officer Kinley transported Candace to the police station for the Intoxilyzer breath tests, he had probable cause, even without the portable breath test, to arrest her for DWI in light of her performance on the FSTs, her erratic driving, and the odor of alcohol. *State v. Granillo-Macias*, 2008-NMCA-021, ¶ 12, 143 N.M. 455, 176 P.3d 1187 (holding that "the smell of alcohol emanating from [the d]efendant, [his] lack of balance at the vehicle, and the manner of [his] performance of the FSTs" constituted probable cause to arrest him for DWI). As a result, the Intoxilyzer breath test results obtained at the station were not rendered inadmissible by anything that preceded them.

**CONCLUSION**

**{31}** For the foregoing reasons, we affirm the district court's order denying Candace's motion to suppress the results of the FSTs and the Intoxilyzer breath tests.

**{32}   IT IS SO ORDERED.**

_____

**CYNTHIA A. FRY, Judge**

9

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**LINDA M. VANZI, Judge**

**Topic Index for _State v. Candace S._, No. 30,331**

| **AE** | **APPEAL AND ERROR** |
|---|---|
| AE-PA | Preservation of Issues for Appeal |
| AE-SR | Standard of Review |

| **CD** | **CHILDREN** |
|---|---|
| CD-CC | Children's Code |

| **CL** | **CRIMINAL LAW** |
|---|---|
| CL-DG | Driving While Intoxicated |

| **CA** | **CRIMINAL PROCEDURE** |
|---|---|
| CA-MW | Miranda Warnings |
| CA-MR | Motion to Suppress |
| CA-RS | Reasonable Suspicion |
| CA-WS | Warrantless Search |

| **CT** | **CONSTITUTIONAL LAW** |
|---|---|
| CT-DP | Due Process |
| CT-FA | Fourth Amendment |
| CT-IT | Interstitial Analysis |
| CT-MW | Miranda Warnings |
| CT-SL | Self-incrimination |
| CT-SU | Suppression of Evidence |

| **EV** | **EVIDENCE** |
|---|---|
| EV-BT | Blood/Breath Tests |